# No. 23-12584

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

————————

IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION

-------------------------------------

KEVIN BASE, *et al.,*

*Plaintiffs-Appellants,*

v.

GLENMARK PHARMACEUTICALS, INC. USA, *et al.,*

*Defendants-Appellees.*

————————

On Appeal from the United States District Court for the Southern
District of Florida, N Nos. 9:20-md-2924, 9:21-cv-80163
Hon. Robin L. Rosenberg

————————

## BRIEF FOR DEFENDANTS-APPELLEES

————————

Joseph G. Petrosinelli
Amy Mason Saharia
Anne E. Showalter
Libby A. Baird
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000
jpetrosinelli@wc.com
asaharia@wc.com
ashowalter@wc.com
lbaird@wc.com

*Counsel for Pfizer Inc.*

Paul Alessio Mezzina
Joshua N. Mitchell
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
pmezzina@kslaw.com
jmitchell@kslaw.com

*Counsel for Boehringer
Ingelheim Pharmaceuticals, Inc.,
Boehringer Ingelheim
Corporation, Boehringer
Ingelheim USA Corporation*

July 25, 2024        *(Additional counsel listed on inside cover)*

Jay P. Lefkowitz
KIRKLAND & ELLIS, LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jleftkowitz@kirkland.com

Cole Carter
KIRKLAND & ELLIS, LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-1951
cole.carter@kirkland.com

*Counsel for GlaxoSmithKline LLC, GlaxoSmithKline Holdings (Americas) Inc., and GlaxoSmithKline PLC*

Steven Reitenour
BOWMAN & BROOKE LLP
150 South 5th Street, #3000
Minneapolis, MN 55402
(612) 672-3255
steve.reitenour
@bowmanandbrooke.com

*Counsel for Patheon Manufacturing Services LLC*

Donald R. McMinn
HOLLINGSWORTH, LLP
1350 1 Street NW
Washington, DC 20005
(202) 898-5800
dmcminn@hollingsworthllp.com

*Counsel for Sandoz Inc.*

Madison H. Kitchens
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
(404) 572-4600
mkitchens@kslaw.com

Matthew V.H. Noller
KING & SPADING LLP
50 California Street
Suite 3300
San Francisco, CA 94111
(415) 318-1200
mnoller@kslaw.com

*Counsel for Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, Boehringer Ingelheim USA Corporation*

Sarah E. Johnston
Robyn S. Maguire
Kian J. Hudson
BARNES
& THORNBURG, LLP
2029 Century Park East
Suite 300
Los Angeles, CA 90067
(310) 284-3798
sarah.johnston@btlaw.com
robyn.maguire@btlaw.com
kian.hudson@btlaw.com

*Counsel for CVS Pharmacy, Inc. and BJ's Wholesale Club Holdings, Inc.*

Ilana H. Eisenstein
Rachel A.H. Horton
M. David Josefovits
DLA PIPER LLP (US)
1650 Market Street
Suite 5000
Philadelphia, PA 19103
(215) 656-2431
Ilana.eisenstein@usdlapiper.com
rachel.horton@usdlapiper.com
david.josefovits@us.dlapiper.com

Samantha L. Chaifetz
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4082
samantha.chaifetz
@us.dlapiper.com

Daniel S. Pariser
Sally L. Pei
ARNOLD & PORTER KAY
SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
Daniel.pariser@arnoldporter.com
sally.pei@arnoldporter.com

*Counsel for Sanofi-Aventis U.S.
LLC, Sanofi US Services, Inc.,
and Chattem, Inc.*

Terry Henry
Melissa F. Murphy
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5334
THenry@BlankRome.com
MFMurphy@BlankRome.com

*Counsel for Apotex Corp.*

Kevin M. Bandy
UB GREENSFELDER LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 698-5000
kbandy@ubglaw.com

*Counsel for Aurobindo
Pharma USA, Inc.*

John R. Ipsaro
UB GREENSFELDER LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 698-5104
jipsaro@ubglaw.com

*Counsel for Dr. Reddy's
Laboratories, Inc.*

Richard M. Barnes
Sean Gugerty
GOODELL DEVRIES LEECH &
DANN, LLP
One South Street
20th Floor
Baltimore, MD 21202
(410) 783-4000
rmb@gdldlaw.com
sgugerty@gdldlaw

*Counsel for L. Perrigo Company*

John W. Eichlin
Douglas M. Tween
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
john.eichlin@linklaters.com
douglas.tween@linklaters.com

*Counsel for Strides Pharma, Inc.
and Strides Pharma Global Pte.
Ltd.*

Asher A. Block
LEWIS BRISBOIS BISGAARD
& SMITH LLP
550 E. Swedesford Road
Suite 270
Wayne, PA 19087
(215) 977-4100
asher.block@lewisbrisbois.com

*Counsel for Granules USA, Inc.
and Granules India Ltd*

Clifford Katz
KELLEY DRYE
& WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800
ckatz@kelleydrye.com

*Counsel for Wockhardt Ltd.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendants-Appellees hereby certify that the jointly filed Certificate of Interested Persons remains correct, other than the addition of:

- Libby A. Baird, Counsel for Defendant-Appellee Pfizer Inc.

- Boehringer Ingelheim Auslandsbeteiligungs GmbH, parent company of Defendant Boehringer Ingelheim USA Corporation

- M. David Josefovits, Counsel for Defendants-Appellees Sanofi-Aventis U.S. LLC, Sanofi US Services, Inc., and Chattem, Inc.

- Joshua N. Mitchell, Counsel for Defendant-Appellees Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, and Boehringer Ingelheim USA Corporation.

- Matthew V.H. Noller, Counsel for Defendant-Appellees Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, and Boehringer Ingelheim USA Corporation.

- Daniel S. Pariser, Counsel for Defendants-Appellees Sanofi-Aventis U.S. LLC, Sanofi US Services, Inc., and Chattem, Inc.

- Steven Reitenour, Counsel for Defendant-Appellee Patheon Manufacturing Services LLC

- UB Greensfelder LLP, Counsel for Defendants-Appellees Aurobindo Pharma USA, Inc. and Dr. Reddy's Laboratories, Inc.

Date: July 25, 2024

> _s/Paul Alessio Mezzina_
> Paul Alessio Mezzina
>
> _Counsel for Boehringer
> Ingelheim Pharmaceuticals, Inc.,
> Boehringer Ingelheim Corporation,
> Boehringer Ingelheim USA
> Corporation_

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................... C-1

TABLE OF AUTHORITIES ....................................................... iii

ORAL ARGUMENT STATEMENT ............................................. vii

INTRODUCTION ................................................................... 1

COUNTERSTATEMENT OF THE ISSUE .............................. 4

BACKGROUND .................................................................... 5

    A.    Base-Cavacini Voluntarily Join and Participate in
           the Zantac MDL ................................................. 5

    B.    Base-Cavacini Choose to Remain in the MDL Even
           After Plaintiffs' Leadership Declines to Pursue Their
           Claims ................................................................ 6

    C.    Base-Cavacini Refuse to Present Expert Evidence or
           Prosecute Their Case ......................................... 9

    D.    The District Court Dismisses Base-Cavacini's Case
           With Prejudice ................................................... 12

SUMMARY OF ARGUMENT ................................................. 13

STANDARD OF REVIEW ...................................................... 16

ARGUMENT ......................................................................... 17

I.    The district court did not abuse its discretion by dismissing
    Base-Cavacini's claims with prejudice ............................. 17

    A.    Base-Cavacini willfully failed to prosecute their case .......... 19

    B.    Base-Cavacini willfully violated the district court's
           order to submit general-causation evidence ......................... 21

    C.    The district court considered and rejected lesser
           sanctions ................................................................ 26

II.    The district court did not abuse its discretion by denying Base-Cavacini's motion to dismiss without prejudice....................31

CONCLUSION ..........................................................................................37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES*

**Cases**

*Amerson v. Comm'r, Ga. Dep't of Corrs.*,
  2022 WL 628418 (11th Cir. Mar. 4, 2022) .......................................... 18

*Anderson v. Harrison*,
  55 F. App'x 346 (6th Cir. 2003) .......................................... 20

*Anderson v. Kennard*,
  4 F. App'x 658 (10th Cir. 2001) .......................................... 20

*Anthony v. Georgia*,
  69 F.4th 796 (11th Cir. 2023) .......................................... 21

\* *Betty K Agencies, Ltd. v. M/V MONADA*,
  432 F.3d 1333 (11th Cir. 2005) .......................................... 17, 18, 20, 26

*Brutus v. Commissioner*,
  393 F. App'x 682 (11th Cir. 2010) .......................................... 26

*Equity Lifestyle Props., Inc.*
  *v. Fla. Mowing & Landscape Serv., Inc.*,
  556 F.3d 1232 (11th Cir. 2009) .......................................... 17

\* *Fisher v. P.R. Marine Mgmt., Inc.*,
  940 F.2d 1502 (11th Cir. 1991) .......................................... 16, 31, 32, 35

*Graham v. Mentor Worldwide LLC*,
  998 F.3d 800 (8th Cir. 2021) .......................................... 28, 34, 36

*Hameed v. IHOP Franchising, LLC*,
  2011 WL 1233183 (E.D. Cal. Mar. 31, 2011) .......................................... 20

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,
  187 F.3d 941 (8th Cir. 1999) .......................................... 36

---

* Authorities upon which we chiefly rely are marked by asterisks.

iii

*Hobbs v. Kroger Co.*,
175 F.3d 1014, 1999 WL 156045 (4th Cir. 1999) ..........................27, 36

*Holcomb v. Federal Home Loan Mortgage Corp.*,
2012 WL 12868404 (S.D. Fla. Feb. 9, 2012) ............................31, 33, 35

\* *In re Asbestos Prods. Liability Litig. (No. VI)*,
718 F.3d 236 (3d Cir. 2013) ....................................................16, 23, 30

\* *In re Bayshore Ford Trucks Sales, Inc.*,
471 F.3d 1233 (11th Cir. 2006)...............................................31, 32, 35

*In re Deepwater Horizon (Barrera)*,
907 F.3d 232 (5th Cir. 2018)................................................................30

\* *In re Deepwater Horizon (Graham)*,
922 F.3d 660 (5th Cir. 2019)..................................................16, 24, 30

*In re Fannie Mae Sec. Litig.*,
552 F.3d 814 (D.C. Cir. 2009) .............................................................16

*In re Guidant Corp. Implantable
Defibrillators Prods. Liab. Litig.*,
496 F.3d 863 (8th Cir. 2007).................................................................16

*Link v. Wabash R.R.*,
370 U.S. 626 (1962) ..............................................................................19

*Macort v. Prem, Inc.*,
2005 WL 8151794 (11th Cir. Mar. 29, 2005) ...............................32, 36

*Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*,
299 F. App'x 664 (9th Cir. 2008) ........................................................34

\* *McBride v. JLG Indus., Inc.*,
189 F. App'x 876 (11th Cir. 2006) ..............................................*passim*

*McLaurin v. Terminix Int'l Co.*,
13 F.4th 1232 (11th Cir. 2021) ............................................................23

*Mitchell v. Roberts*,
43 F.4th 1074 (10th Cir. 2022) ............................................................32

\* *Moon v. Newsome,*
    863 F.2d 835 (11th Cir. 1989)................................................17, 18, 30

\* *Mosley v. JLG Indus., Inc.,*
    189 F. App'x 874 (11th Cir. 2006) ..........................................33, 35, 36

*Paturzo v. Home Life Ins. Co.,*
    503 F.2d 333 (4th Cir. 1974)................................................................34

*Paulucci v. City of Duluth,*
    826 F.2d 780 (8th Cir. 1987)................................................................32

*Perkins v. MBNA Am.,*
    43 F. App'x 901 (6th Cir. 2002) ..........................................................36

*Phillips USA, Inc. v. Allflex USA, Inc.,*
    77 F.3d 354 (10th Cir. 1996)...............................................................34

*Phipps v. Blakeney,*
    8 F.3d 788 (11th Cir. 1993)..................................................................18

*Pinney Dock & Transp. Co. v. Penn Cent. Corp.,*
    196 F.3d 617 (6th Cir. 1999)................................................................34

*San Marco v. City of St. Petersburg,*
    185 F.R.D. 679 (M.D. Fla. 1999)....................................................28, 29

*Stephens v. Ga. Dep't of Transp.,*
    134 F. App'x 320 (11th Cir. 2005) .......................................................35

*U.S. ex rel. Doe v. Dow Chem. Co.,*
    343 F.3d 325 (5th Cir. 2003)................................................................33

*Vaughn v. City Bank & Tr. Co.,*
    218 F.2d 802 (5th Cir. 1955)................................................................20

*Zocaras v. Castro,*
    465 F.3d 479 (11th Cir. 2006)........................................................16, 26

**Rules**

\* Fed. R. Civ. P. 41 ........................................................................*passim*

S.D. Fla. L.R. 7.1 .............................................................. 12, 25

**Other Authorities**

9 Wright & Miller,
    Federal Practice and Procedure (4th ed.) ..................................... 20, 25

## ORAL ARGUMENT STATEMENT

Defendants-Appellees do not oppose Plaintiffs' request for oral argument. *See* 11th Cir. R. 28-1(c). Oral argument will assist the Court in resolving the issues raised in this appeal.

# INTRODUCTION

This is one of thousands of appeals before this Court that arise out of a multi-district litigation ("MDL") involving claims that Plaintiffs developed cancer from medications containing ranitidine. This appeal involves only a narrow question: Whether the district court abused its discretion by dismissing one particular case in the MDL with prejudice when, more than three years into the MDL, the Plaintiffs in that case expressly refused to prosecute their claims or to submit evidence required by a court order, despite having notice that doing so could result in dismissal with prejudice. For the reasons explained below, the district court's decision was entirely proper.

Plaintiffs-Appellants Kevin Base and James Cavacini ("Base-Cavacini") voluntarily filed their action directly in the MDL roughly a year after the MDL started. After extensive discovery—all of which was available to Base-Cavacini—Plaintiffs' leadership decided to pursue claims only with respect to five "designated cancers" for which they believed they could establish general causation. Base-Cavacini's claims relate to a "non-designated cancer." At that time, Base-Cavacini could have unilaterally dismissed their claims without prejudice under

Rule 41(a)(1). Almost every other Non-Designated Cancer Plaintiff did so, but Base-Cavacini did not. Instead, they chose to take their chances by remaining in the MDL, presumably hoping that the district court would deny the Brand Defendants' *Daubert* motions in the designated-cancer cases. But they also hedged their bets—Base filed a duplicative lawsuit in Pennsylvania state court alleging the same claims that Base-Cavacini alleged in the MDL.

These tactics did not pay off. The district court excluded Plaintiffs' general causation experts under *Daubert* and granted the Brand Defendants summary judgment on the Designated-Cancer Plaintiffs' claims. It then gave Non-Designated-Cancer Plaintiffs such as Base-Cavacini two months to "certify [their] intent to provide general causation expert reports" and four months to "deliver [their] expert reports" to Defendants. MDL.Dkt.6271:1.[1] The court warned that failure to meet these deadlines could result in "dismissal with prejudice." MDL.Dkt.6271:2. Despite that warning, Base-Cavacini declared that

_____

[1] This brief refers to docket entries in the MDL docket below as "MDL.Dkt." and to those in the individual docket below as "*Base*.Dkt." Cited page numbers appear after the colon and refer to page numbers within the docket entry as assigned by the district court ECF system.

they did "not intend to pursue any claim" and that they would "not provide a general causation expert report." MDL.Dkt.6383. The district court therefore granted Defendants' motion to dismiss Base-Cavacini's claims with prejudice under Rule 41(b).

That decision was not an abuse of the district court's discretion—indeed, the court could hardly have done otherwise. When Base-Cavacini abandoned their claims and refused to comply with the court's order to submit expert evidence on general causation, they willfully failed both "to prosecute" their case and "to comply with [the district court's] order." Fed. R. Civ. P. 41(b). Notably, while Base-Cavacini incorrectly argue that their actions did not violate the court's order, they do not dispute that their actions constituted a willful failure to prosecute. They have thus forfeited any challenge to that independently sufficient ground for affirmance.

Moreover, dismissal without prejudice would not have been appropriate here for numerous reasons. The age of the MDL and the significant proceedings that had already occurred weighed heavily in favor of dismissal *with* prejudice. So too did the district court's express warning—which Base-Cavacini failed to heed—that Non-Designated-

Cancer Plaintiffs who failed to produce expert evidence could see their cases dismissed with prejudice. And dismissal with prejudice was especially warranted in light of Base-Cavacini's blatant attempt at forum-shopping, in which they pursued the same claims simultaneously in both federal and state court, then tried to drop their federal claims only after it became clear that they would lose in federal court. These factors and others discussed below mean that the district court reached the only reasonable decision. At a minimum, it surely did not abuse its broad discretion. This Court should affirm.

## COUNTERSTATEMENT OF THE ISSUE

Whether the district court abused its discretion by dismissing Base-Cavacini's claims with prejudice when, more than three years into a complex MDL, they expressly abandoned their claims and refused to submit evidence required by a court order, despite having notice that doing so could result in dismissal with prejudice.

## BACKGROUND

### A. Base-Cavacini Voluntarily Join and Participate in the Zantac MDL

Base-Cavacini are two of thousands of plaintiffs in the Zantac MDL, which was created on February 6, 2020. The history of the MDL is set forth in detail in the Brand Defendants' brief in Case No. 23-13283.

At the outset of the MDL, the parties agreed to "focus, at least initially, on whether the Plaintiffs had sufficient evidence of general causation," *i.e.*, evidence that "ranitidine [can] cause cancer in humans." MDL.Dkt.6766:1. The district court thus adopted an 18-month discovery period that would culminate in "general causation *Daubert* motions." MDL.Dkt.1194:1. The court also adopted a pleading structure utilizing master and short-form complaints. Plaintiffs' leadership filed a Master Personal Injury Complaint containing general allegations, and individual plaintiffs filed short-form complaints identifying which claims each plaintiff was asserting against which defendants and providing additional details. MDL.Dkt.876; MDL.Dkt.6303:3.

Base-Cavacini voluntarily filed their initial short-form complaint directly in the MDL on January 27, 2021, shortly after the district court had issued its rulings on Defendants' first round of motions to dismiss.

*Base*.Dkt.1. Plaintiffs filed an amended master complaint a week later, MDL.Dkt.2759, and discovery proceeded throughout 2021. The court set a January 24, 2022 deadline for "[c]ompletion of all fact discovery of [d]efendants" and a May 31, 2022 deadline for expert discovery. MDL.Dkt.3619:2. Base-Cavacini filed an amended short-form complaint on June 18, 2021. *Base*.Dkt.9. Two weeks later, the district court issued orders on Defendants' second round of motions to dismiss. MDL.Dkt.3715, 3716, 3719. Plaintiffs filed a second amended master complaint on August 2, 2021. MDL.Dkt.3887.

## B. Base-Cavacini Choose to Remain in the MDL Even After Plaintiffs' Leadership Declines to Pursue Their Claims

In late January 2022, after "extensive discovery on the capability of ranitidine to cause cancer, including consultations with scientific experts," Plaintiffs' leadership elected to pursue only claims related to five "Designated Cancers" (bladder, esophageal, gastric, liver, and pancreatic cancer). MDL.Dkt.6766:1-2; *see* MDL.Dkt.5147. As for "Non-Designated Cancers" (everything else), one of Plaintiffs' epidemiological experts concluded that there was not sufficient evidence that ranitidine could cause those types of cancer. MDL.Dkt.6766:1-2. Plaintiffs'

leadership thus elected to produce general-causation expert reports only for designated cancers. MDL.Dkt.6766:2. Base-Cavacini allege that Base was diagnosed with colorectal cancer, a non-designated cancer. *Base*.Dkt.9.

In April 2022, "the focus of th[e] MDL … turned to expert discovery, expert challenges, and bellwether trial preparation." MDL.Dkt.5452:1. The district court issued a pretrial order ("PTO") setting deadlines for *Daubert* and summary-judgment motions related to "whether ranitidine can cause one of the five designated cancers." MDL.Dkt.5579:1. The court explained that it would "address Non-Designated Cancers … after ruling on the pending *Daubert* motions for Designated Cancers." MDL.Dkt.5824; *accord* MDL.Dkt.5858.

At that time, Non-Designated-Cancer Plaintiffs (like Base-Cavacini) who wished to withdraw their claims had several ways to do so. In February 2022, the court issued an order providing that "[a]ny Plaintiff who previously filed a Short Form Complaint claiming a Non-Designated Cancer or injury, but who no longer wishes to pursue claims for the Non-Designated Cancer or injury, shall so indicate by amending his or her Short-Form Complaint." MDL.Dkt.5348:8. The court set a

deadline of June 30, 2022, for such amendments. MDL.Dkt.5348:8. Base-Cavacini did not amend their short-form complaint to withdraw their claims by that deadline.

In addition, under PTO 31, Non-Designated-Cancer Plaintiffs "could still unilaterally dismiss their cases" under Rule 41(a)(1)(A)(i). MDL.Dkt.6766:2. On May 12, 2022, the district court issued PTO 78, which set a deadline of July 1, 2022, for such unilateral, without-prejudice dismissals. MDL.Dkt.6766:2; *see* MDL.Dkt.5580. The court set this deadline "[b]ecause th[e] MDL [was] in the final stages of bellwether trial selection and *Daubert* challenges to expert testimony on general causation, and because the [c]ourt ha[d] begun the process of finalizing the claims and parties in th[e] MDL." MDL.Dkt.5580:1.

In light of lead counsel's decision not to produce expert reports for non-designated cancers, "almost every Non-Designated Cancer Plaintiff in th[e] MDL dismissed his or her case without prejudice." MDL.Dkt.6766:2. But Base-Cavacini did not. As a result, they had to "prosecute [their] case on an individualized basis" and "could only dismiss their case[] with the consent of the [d]efendants or through an order of the [c]ourt." MDL.Dkt.6766:2-3.

Between June and November 2022, the Brand Defendants and Designated-Cancer Plaintiffs litigated *Daubert* motions and associated motions for summary judgment. Dkts.5732-36,5868-70,5947,6029-34, 6060,6083,6098-6100,6102,6104,6152-90. While those motions were pending, in September 2022, Base filed a lawsuit in Pennsylvania state court alleging the same claims that Base-Cavacini alleged in this case. MDL.Dkt.6747-1.

### C. Base-Cavacini Refuse to Present Expert Evidence or Prosecute Their Case

The district court granted the Brand Defendants' *Daubert* and summary-judgment motions on December 6, 2022. MDL.Dkt.6120. The court excluded as unreliable all of the Designated-Cancer Plaintiffs' general-causation experts. MDL.Dkt.6120:337. And based on the Designated-Cancer Plaintiffs' failure "to produce admissible primary evidence of general causation," the court granted the Brand Defendants summary judgment on the Designated-Cancer Plaintiffs' claims. MDL.Dkt.6120:337.

Having resolved the designated-cancer claims, the district court in February 2023 issued PTO 81 to define the process through which Non-

Designated-Cancer Plaintiffs could "prosecute [their] case[s] on an individualized basis." MDL.Dkt.6766:3.

PTO 81 established specific "deadlines and procedures" for Non-Designated-Cancer Plaintiffs. MDL.Dkt.6271:1-2. It required each such plaintiff, by April 12, 2023, to (1) "file a Notice of Non-Designated Cancers each Plaintiff intend[ed] to pursue, if any," and (2) "certify his or her intent to provide general causation expert reports on the Non-Designated Cancer(s)." MDL.Dkt.6271:2. The order further required Non-Designated-Cancer Plaintiffs to "deliver [their] expert reports" by June 12, 2023. MDL.Dkt.6271:2. The order warned that "[i]f any Plaintiff fail[ed] to meet the requirements and deadlines established by this Order, his or her action may be subject to dismissal with prejudice under Rule 41(b)." MDL.Dkt.6271:2.

The district court made clear that a plaintiff could not comply with PTO 81 merely by declaring an intent *not* to submit a general-causation expert report. The order expressly referred to its requirements as including a "requirement to provide a general causation expert report," which could be satisfied only by "a scientific expert [who] author[s] an expert report." MDL.Dkt.6271:3. The court said it would "evaluate the …

general causation expert reports produced" and then enter "orders setting the schedule for expert discovery and *Daubert* general causation motion practice." MDL.Dkt.6271:3.

In March 2023, Base-Cavacini filed a "Notice." MDL.Dkt.6383. But it was not, as PTO 81 required, a "Notice of Intent *to pursue* a Non-Designated Cancer claim" and a "certification of intent *to subsequently provide* a general causation expert report." MDL.Dkt.6271:2 (emphases added). Instead, Base-Cavacini declared that they did "not intend to pursue any claim based on colon cancer or any other claim in this case" and that they would "not provide a general causation expert report." MDL.Dkt.6383. Consistent with that abandonment of their claims, Base-Cavacini did not "deliver [an] expert report[]" to Defendants by June 12, 2023, as PTO 81 also required. MDL.Dkt.6271:2.

Defendants moved to dismiss the claims of Non-Designated-Cancer Plaintiffs who, like Base-Cavacini, "did not file any [n]otice of intention to pursue any claim." MDL.Dkt.6686:2. Defendants submitted a list of the plaintiffs whose claims they sought to dismiss, which included Base-Cavacini by name and case number. MDL.Dkt.6686:1 & n.1; MDL.Dkt.6686-1:1. Defendants argued that Base-Cavacini's "failure to

submit expert evidence" was "dispositive of their claims." MDL.Dkt.6686:4-5.

Under the district court's local rules, Base-Cavacini had 14 days to file an opposition to Defendants' motion. S.D. Fla. L.R. 7.1(c)(1). Base-Cavacini did not do so. MDL.Dkt.6766:4. Only after Defendants filed a notice informing the court that Plaintiffs had failed to file an opposition, MDL.Dkt.6734, did Base-Cavacini file an untimely opposition, MDL.Dkt.6747. That same day, Base-Cavacini also moved for voluntary dismissal without prejudice under Rule 41(a)(2). MDL.Dkt.6748.

### D. The District Court Dismisses Base-Cavacini's Case With Prejudice

The district court granted Defendants' motion to dismiss with prejudice because the Non-Designated-Cancer Plaintiffs, including Base-Cavacini, had both "fail[ed] to prosecute" and "fail[ed] to … comply with a court order." MDL.Dkt.6766:4 (quotation marks omitted). *First*, the court—specifically citing Base-Cavacini's opposition—found that "the Non-Designated Cancer Plaintiffs who filed an express refusal to produce evidence … clearly and unequivocally elected not to prosecute their cases." MDL.Dkt.6766:6. *Second*, the court found that "Pretrial Order 81 ordered the Plaintiffs to produce their evidence of general causation by a

date certain, and the individual Plaintiffs' refusal to do so amounts to a violation of this Court's order." MDL.Dkt.6766:6.

The court also concluded that dismissal with prejudice was more appropriate than dismissal without prejudice. MDL.Dkt.6766:6. It identified multiple reasons for that conclusion, including the need "to avoid the congestion of its docket," the "age of th[e] MDL," the fact that Non-Designated-Cancer Plaintiffs had "access to a large amount of MDL discovery" and "adequate time to gather evidence," and PTO 81's "forewarning to the Plaintiffs of the consequences of failing to provide any evidence of general causation." MDL.Dkt.6766:6-7. The court denied as moot Base-Cavacini's motion for voluntary dismissal without prejudice. MDL.Dkt.6766:6-7.

At the time of the district court's dismissal order, the court had entered 83 pretrial orders. The dismissal order was the MDL's 6,766th docket entry.

## SUMMARY OF ARGUMENT

The district court did not abuse its broad discretion by dismissing Base-Cavacini's claims with prejudice.

**I.** Under both Rule 41 and the court's inherent power to manage a large MDL docket, the court properly found that Base-Cavacini willfully failed to prosecute their case and violated PTO 81's requirements to submit expert evidence on general causation. In their self-styled "Notice of Intent," Base-Cavacini "clearly and unequivocally elected not to prosecute their case[]," MDL.Dkt.6766:6, which by itself warrants dismissal with prejudice. Fed. R. Civ. P. 41(b). Base-Cavacini also refused to "provide a general causation expert report," MDL.Dkt.6383, which violated PTO 81. PTO 81 did not, as Base-Cavacini argue, authorize plaintiffs to simply tell the court they were abandoning their claims. It specifically required them to certify their "intent to produce expert reports on general causation" and "to produce their evidence of general causation by a date certain." MDL.Dkt.6766:3,6. Base-Cavacini's refusal to do so "amount[ed] to 'defiance of reasonable orders,'" which further supports dismissal with prejudice. MDL.Dkt.6766:6.

In light of that willful conduct, the district court properly found that dismissal without prejudice was not an adequate alternative remedy. Base-Cavacini's abandonment of their claims, more than two years after filing their complaint, suggested an improper intent to forum-shop and

avoid an adverse decision on the merits; added to "the congestion of [the] docket" and undermined the court's efforts "to keep these proceedings progressing efficiently," MDL.Dkt.6766:6; and disregarded PTO 81's clear warning "of the consequences of failing to provide any evidence of general causation," MDL.Dkt.6766:6-7. Those factors justified dismissal with prejudice.

**II.** Accordingly, the district court also properly denied (as moot) Base-Cavacini's motion for voluntary dismissal without prejudice. The same factors already discussed support the court's denial of Base-Cavacini's motion. Base-Cavacini waited more than two years to move to dismiss their claims—after the period for unilateral dismissal had expired, after the completion of extensive discovery, after the court had resolved numerous dispositive motions and other disputes between the MDL parties, and after Defendants had moved to dismiss Base-Cavacini's claims. The resources the court and Defendants expended during those years of litigation constituted sufficient prejudice to deny Base-Cavacini's motion.

## STANDARD OF REVIEW

This Court reviews both dismissals under Rule 41(b) and decisions on motions to dismiss under Rule 41(a)(2) for abuse of discretion. *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006); *Fisher v. P.R. Marine Mgmt., Inc.*, 940 F.2d 1502, 1503 (11th Cir. 1991) (per curiam). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Zocaras*, 465 F.3d at 483 (cleaned up).

District courts receive "special deference in the context of an MDL." *In re Deepwater Horizon* (*Graham*), 922 F.3d 660, 666 (5th Cir. 2019) (cleaned up); *accord In re Asbestos Prods. Liability Litig. (No. VI)*, 718 F.3d 236, 243, 247-48 (3d Cir. 2013); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007). District courts "must have authority to manage their dockets, especially during massive litigation such as this, and [appellate courts] owe deference to their decisions." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822-23 (D.C. Cir. 2009).

# ARGUMENT

## I. The district court did not abuse its discretion by dismissing Base-Cavacini's claims with prejudice.

Under Rule 41(b) and district courts' inherent authority, a "court may dismiss a claim if the plaintiff fails to prosecute or comply with a court order." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009). In particular, dismissal with prejudice is appropriate when there is "a clear record of delay or willful conduct" and "lesser sanctions are inadequate to correct such conduct." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005). "While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

Under that standard, the district court's order dismissing Base-Cavacini's claims with prejudice was not an abuse of discretion. Base-Cavacini willfully failed to prosecute their case, announcing that they would not proceed with their claims or introduce essential expert evidence on general causation. That willful refusal to introduce causation evidence also violated PTO 81, which required all Non-Designated-

Cancer Plaintiffs to submit general-causation expert disclosures. PTO 81 warned Base-Cavacini in no uncertain terms that their decision not to pursue their claims or submit general causation evidence could result in dismissal with prejudice.

The district court appropriately found that these circumstances supported dismissal with prejudice. Contrary to Base-Cavacini's argument (Base-Cavacini.Br.10-11), a district court need not *expressly* find willful conduct or that lesser sanctions are inadequate before dismissing a claim with prejudice; those findings "can be 'implicit.'" *Amerson v. Comm'r, Ga. Dep't of Corrs.*, 2022 WL 628418, at *3 (11th Cir. Mar. 4, 2022) (quoting *Betty K*, 432 F.3d at 1139); *see also Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993) (rejecting argument that "the district judge was required to state (explicitly or implicitly) that she had considered lesser sanctions and found them inappropriate"); *Moon*, 863 F.2d at 839 (affirming dismissal because "the record supports what is implicit in the district court's decision"). But even if the district court were required to make those findings expressly, it did so by concluding that Base-Cavacini's conduct was intentional and that dismissal without

prejudice was not an adequate sanction. This Court should affirm that decision.

## A. Base-Cavacini willfully failed to prosecute their case.

Although Base-Cavacini's brief focuses exclusively on whether they violated PTO 81, the district court primarily dismissed their claims because they "elected not to prosecute their case[]." MDL.Dkt.6766:6. That fact alone supports dismissal with prejudice under Rule 41(b), which authorizes dismissal when a "plaintiff fails to prosecute." Fed. R. Civ. P. 41(b). It also supports dismissal under the district court's inherent authority to "dismiss … for lack of prosecution." *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962).

There can be no dispute that Base-Cavacini willfully failed to prosecute their case. They declared that they did "not intend to pursue any claim based on colon cancer or any other claim in this case, and w[ould] not provide a general causation expert report." MDL.Dkt.6383. Through that declaration, they "even more clearly and unequivocally elected not to prosecute their cases" than did the plaintiffs who did "not file[] anything." MDL.Dkt.6766:6. Such a "serious failure to prosecute"

justifies dismissal "even when there is no other noncompliance." 9 Wright & Miller, Federal Practice and Procedure § 2369 (4th ed.).

Indeed, it is hard to imagine a more obvious failure to prosecute than a plaintiff who "unequivocally express[es] his intent to abandon the action." *Anderson v. Kennard*, 4 F. App'x 658, 659 (10th Cir. 2001). In *Anderson*, for example, the Tenth Circuit affirmed a district court's decision to dismiss with prejudice the claims of a plaintiff who "inform[ed] the court he would no longer pursue his suit." *Id.* Similarly, the former Fifth Circuit affirmed the dismissal with prejudice of a plaintiff's claims after he filed "an instrument … stating that he did not intend to take any further steps in the prosecution of his cause." *Vaughn v. City Bank & Tr. Co.*, 218 F.2d 802, 802-04 & n.1 (5th Cir. 1955)[2]; *see also Anderson v. Harrison*, 55 F. App'x 346, 347-48 (6th Cir. 2003) (affirming dismissal with prejudice for failure to prosecute because plaintiff told district court "he did not want to try his case"); *Hameed v. IHOP Franchising, LLC*, 2011 WL 1233183, at *2 (E.D. Cal. Mar. 31, 2011) (dismissing claims with prejudice for failure to prosecute because

---

[2] Fifth Circuit decisions from before October 1, 1981, are binding on this Court. *Betty K*, 432 F.3d at 1337 n.1.

plaintiff "expressly stated his desire to discontinue litigation"), *aff'd*, 520 F. App'x 520 (9th Cir. 2013).

Remarkably, Base-Cavacini's brief never addresses this issue. They instead mischaracterize the district court's decision as "holding that [they] were 'Delinquent Plaintiffs' who failed to file a Notice of Intent." Base-Cavacini.Br.8. Not so: The court did not dismiss Base-Cavacini's claims because they "failed to file a Notice of Intent." *Id.* The court dismissed their claims because they "filed an express refusal to produce evidence" and "elected not to prosecute their cases." MDL.Dkt.6766:6. Base-Cavacini do not challenge dismissal on these bases and have thus forfeited any argument that the district court abused its discretion by dismissing their action with prejudice for non-prosecution. *See, e.g.*, *Anthony v. Georgia*, 69 F.4th 796, 808 (11th Cir. 2023). In any event, for the reasons explained above, the district court's dismissal on this ground was not an abuse of discretion.

## B. Base-Cavacini willfully violated the district court's order to submit general-causation evidence.

In addition to their failure to prosecute their claims, Base-Cavacini also willfully violated "a court order," namely, PTO 81. Fed. R. Civ. P. 41(b). Base-Cavacini do not challenge on appeal the validity of PTO 81

or any of the district court's pretrial orders. Instead, they argue that PTO 81 merely required them to file a document titled "Notice of Intent" that stated "their intent *on* pursuing claims and serving expert reports." Base-Cavacini.Br.11 (emphasis added). This argument is foreclosed by the plain language of the district court's order. PTO 81 specifically required Base-Cavacini to "certify [their] intent *to* provide general causation expert reports" linking ranitidine to Base's cancer. MDL.Dkt.6271:2 (emphasis added). It also required them to "deliver" their "expert reports" by June 12, 2023. MDL.Dkt.6271:2. The district court made clear that the order imposed a "requirement to provide a general causation expert report." MDL.Dkt.6271:3.

Base-Cavacini's "Notice" did not satisfy PTO 81's requirements. Far from "certify[ing] [their] intent to provide general causation expert reports," MDL.Dkt.6271:2, Base-Cavacini *denied* any such intent, MDL.Dkt.6383. Consistent with that denial, they then failed to "deliver" an "expert report[]" to Defendants by the court-ordered deadline. MDL.Dkt.6271:2. As the district court found, their actions violated PTO 81's requirements "to file a notice of intent to produce expert reports on general causation" and "to produce their evidence of general causation by

a date certain." MDL.Dkt.6766:3,6. Base-Cavacini's "refusal to produce evidence" thus "amount[ed] to 'defiance of reasonable orders.'" MDL.Dkt.6766:6; *see In re Asbestos*, 718 F.3d at 248-49 (affirming dismissal with prejudice when plaintiffs violated order to submit evidence).

Base-Cavacini's attempt to interpret PTO 81 as requiring Non-Designated-Cancer Plaintiffs only to declare *whether or not* they would produce evidence to support their claims, such that they could satisfy PTO 81 merely by stating their "intent to *not* pursue 'any' claim and their intent to *not* provide general causation expert reports," is untenable. Base-Cavacini.Br.3 (emphasis altered); *see also* Base-Cavacini.Br.9,11. As explained above, that interpretation is contrary to the plain language of PTO 81. It is also contrary to the district judge's own interpretation of her order, which is entitled to considerable deference. *See, e.g.*, *McLaurin v. Terminix Int'l Co.*, 13 F.4th 1232, 1241 (11th Cir. 2021). And it makes no sense in light of the lengthy MDL proceedings that led up to PTO 81. As explained, the district court had already given Non-Designated-Cancer Plaintiffs ample opportunity to either exit the MDL without prejudice or stay in and take their chances, and PTO 81 was directed only

to those who had chosen to stay. Against that backdrop, any attempt to read PTO 81 as a mere invitation for those plaintiffs to produce evidence—with no consequences for refusing to do so—is implausible.

As with their failure to prosecute, Base-Cavacini's refusal to submit general-causation evidence was intentional. They knew that, as Non-Designated-Cancer Plaintiffs, they would have to "prosecute [their] case on an individualized basis." MDL.Dkt.6766:2-3. During the more than two years their action was pending, they received the benefit of "a large amount of MDL discovery," while also having years "to gather evidence to prosecute [their] case." MDL.Dkt.6766:6. And yet, when warned "that the failure to file *either* a notice *or* an expert report could result in the dismissal, with prejudice, of [their] individual case," MDL.Dkt.6766:3 (emphasis added), they refused to produce the causation evidence necessary to prove their claims. That is willful conduct. *See Graham*, 922 F.3d at 666-67 (holding noncompliance with MDL pretrial order was "'[c]ontumacious'").

Finally, Base-Cavacini did not timely oppose Defendants' motion to dismiss. MDL.Dkt.6766:1,4. They waited until after Defendants pointed out their non-opposition, then filed a tardy opposition along with a

motion for voluntary dismissal. Dkts.6747,6748. That violated the district court's local rules, which impose a 14-day deadline for oppositions to motions and provide that "[f]ailure" to file a timely opposition "may be deemed sufficient cause for granting the motion by default." S.D. Fla. L.R. 7.1(c)(1). Although the district court did not rely on Base-Cavacini's untimely opposition as a basis for dismissal, it nonetheless illustrates Base-Cavacini's general failure to comply with reasonable court procedures. *Cf.* Wright & Miller § 2370 ("The failure to respond to a motion to dismiss for failure to prosecute may be a particularly aggravating factor that will weigh heavily in the judge's decision [on] the motion.").

Base-Cavacini's argument that they were not even *subject* to Defendants' motion to dismiss (Base-Cavacini.Br.13) is frivolous. The motion targeted a defined list of Non-Designated-Cancer Plaintiffs, which expressly included Base-Cavacini by name and case number. MDL.Dkt.6686:1 & n.1; MDL.Dkt.6686-1:1.[3] Base-Cavacini's flawed

---

[3] Contrary to Base-Cavacini's assertions (Base-Cavacini.Br.6), Defendants' counsel told Base-Cavacini's counsel that they were "among many similarly situated plaintiffs in the Zantac MDL who did not file notices of intent to pursue their non-designated cancer cases pursuant to PTO 81." MDL.Dkt.6747-2:2.

contention that they complied with PTO 81 was only a ground for opposing the motion to dismiss, not a reason to ignore a motion that unambiguously sought to dismiss their claims. In any event, a "district court may *sua sponte* dismiss a case under Rule 41(b)" even absent a motion. *Brutus v. Commissioner*, 393 F. App'x 682, 683 (11th Cir. 2010) (per curiam) (citing *Betty K*, 432 F.3d at 1337).

## C. The district court considered and rejected lesser sanctions.

In addition to finding that Base-Cavacini willfully failed to prosecute their case and willfully violated PTO 81, the district court considered and rejected the lesser sanction of dismissal without prejudice. MDL.Dkt.6766:6-7. The court gave multiple reasons why, in the circumstances of this complex MDL, dismissal with prejudice was the appropriate sanction. "[A] determination that no other sanction would suffice radiates from [the court's] explanation for the dismissal." *Zocaras*, 465 F.3d at 484.

***First***, Base-Cavacini "elected not to prosecute their case[]," MDL.Dkt.6766:6, because it was doomed to fail on the merits. They "ha[d] access to a large amount of MDL discovery" and "adequate time to gather evidence to prosecute [their] case," but they did not do so.

MDL.Dkt.6766:6. Nor did they seek voluntary dismissal during the lengthy time period in which they could have done so "unilaterally" under Rule 41(a)(1)(A)(i). Instead, they sought voluntary dismissal only *after* the district court excluded the Designated-Cancer Plaintiffs' general-causation experts and *after* Defendants filed their Rule 41(b) motion. MDL.Dkt.6766:2,4.

This history strongly suggests Base-Cavacini made a tactical decision to sit on their claims while waiting to see what the district court would do with the Designated-Cancer Plaintiffs' experts. Had the court denied the Brand Defendants' *Daubert* motions, Base-Cavacini likely would have tried to benefit from that ruling—for example, by arguing that similar expert methodologies could support non-designated-cancer claims as well. But when the district court ruled *against* the Designated-Cancer Plaintiffs, Base-Cavacini sought to avoid the inevitable consequences of that decision for their own claims. Dismissal with prejudice properly prevented that apparent attempt to "avoid an expected adverse ruling" on the merits. *McBride v. JLG Indus., Inc.*, 189 F. App'x 876, 878 (11th Cir. 2006) (per curiam); *see Hobbs v. Kroger Co.*, 175 F.3d 1014, 1999 WL 156045, at *1-2 (4th Cir. 1999) (per curiam) (affirming

dismissal with prejudice when plaintiff, despite "ha[ving] over a year to conduct discovery," "failed to obtain any expert testimony" on causation).

Dismissal with prejudice also was appropriate to prevent Base-Cavacini's obvious attempt at forum-shopping. At the same time that they were pursuing their claims in the MDL, Base filed duplicative claims in Pennsylvania state court. MDL.Dkt.6766:6 (citing MDL.Dkt.6747:6); *see* MDL.Dkt.6747-1. Once the district court ordered Base-Cavacini "to produce their evidence of general causation," they told the court they would "only prosecute their cases in state court, not federal court." MDL.Dkt.6766:6. The most plausible explanation for that behavior is a "motive … to avoid an adverse judgment in an unfavorable forum," which further warrants the remedy of dismissal with prejudice. *Graham v. Mentor Worldwide LLC*, 998 F.3d 800, 805 (8th Cir. 2021). Plaintiffs cannot simultaneously pursue claims in two forums to hedge their bets and then just drop their claims in one forum once it is clear that they will imminently lose on the merits.

Base-Cavacini cite *San Marco v. City of St. Petersburg*, 185 F.R.D. 679, 680 (M.D. Fla. 1999), which granted a Rule 41(a)(2) motion to allow the plaintiff to "pursue an earlier-filed case in state court." But Base filed

his state-court complaint almost eighteen months *after* Base-Cavacini's federal complaint. Moreover, while the plaintiff in *San Marco* filed his Rule 41(a)(2) motion less than eight months after his complaint and before there had been "substantial proceedings," *id.*, Base-Cavacini filed their motion more than two years after their complaint, after very substantial MDL proceedings, and after discovery on common issues that benefitted all Plaintiffs in the MDL. And while the court in *San Marco* ultimately granted the plaintiff's request for dismissal without prejudice, it did so "on the condition that Plaintiff pay the costs of removal," among other requirements designed to mitigate the prejudice to the defendant. *Id.* at 681. Moreover, the fact that a different district judge granted a different plaintiff's Rule 41(a)(2) motion cannot establish that the court here *abused its discretion* by denying Base-Cavacini's motion.

**Second**, Base-Cavacini's refusal "to produce general causation evidence" after years of litigation added to "the congestion of [the] docket" and undermined the court's efforts "to keep these proceedings progressing efficiently." MDL.Dkt.6766:6. "Any sanction other than dismissal [with prejudice] would not [have] achieve[d] the desired effect of PTO [81], and would [have] further delay[ed] the district court's efforts

to adjudicate the MDL expeditiously." *In re Deepwater Horizon* (*Barrera*), 907 F.3d 232, 236 (5th Cir. 2018) (per curiam); *see also In re Asbestos*, 718 F.3d at 248 (affirming dismissal with prejudice when failure to present evidence "h[eld] up the progress of the cases"). As the district court explained, "the age of this MDL" justified putting a final end to proceedings. MDL.Dkt.6766:6.

***Third***, PTO 81 gave Base-Cavacini clear notice "of the consequences of failing to provide any evidence of general causation," MDL.Dkt.6766:6-7, and they still refused to produce that evidence. In these circumstances, dismissal with prejudice was "not an abuse of discretion." *Moon*, 863 F.2d at 837; *see also Graham*, 922 F.3d at 666 (affirming dismissal with prejudice based on violation of MDL pretrial order that "warned plaintiffs that non-compliance would result in 'dismissal of their claims with prejudice without further notice'" (quoting *Barrera*, 907 F.3d at 234)); *Barrera*, 907 F.3d at 236 (same); *In re Asbestos*, 718 F.3d at 248 (affirming dismissal with prejudice based on failure to present evidence when "the consequences of doing so … were quite clear").

## II. The district court did not abuse its discretion by denying Base-Cavacini's motion to dismiss without prejudice.

As explained, the district court acted within its discretion when it granted Defendants' motion for dismissal *with* prejudice under Rule 41(b). That dismissal mooted Base-Cavacini's Rule 41(a)(2) motion for dismissal *without* prejudice—filed only after Base-Cavacini missed the deadline for responding to Defendants' motion. MDL.Dkt.6766:7.

The district court was not required to deny Defendants' motion in favor of Base-Cavacini's motion. Because Rule 41(a)(2) "exists chiefly for protection of defendants," *Fisher*, 940 F.2d at 1503, "[a] plaintiff enjoys no right to a voluntary dismissal without prejudice," *McBride*, 189 F. App'x at 878; *accord In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1259 (11th Cir. 2006); *Fisher*, 940 F.2d at 1502. Base-Cavacini cite one district court decision granting such a motion (Base-Cavacini.Br.12), but they cite no decision from this Court reversing the denial of a Rule 41(a)(2) motion.[4] To Defendants' knowledge, no such Eleventh Circuit decision exists.

---

[4] They also cite *Holcomb v. Federal Home Loan Mortgage Corp.*, 2012 WL 12868404 (S.D. Fla. Feb. 9, 2012), but that decision *denied* the plaintiff's motion. *Id.* at *1-2.

That is because a "decision whether or not to grant" a Rule 41(a)(2) motion "is within the sound discretion of the district court." *Fisher*, 940 F.2d at 1503. That discretion is "broad," *McBride*, 189 F. App'x at 877 (quotation marks omitted)—so broad, in fact, that a court need not "share [its] reasons for denying Rule 41(a)(2) motions to dismiss in writing," *Bayshore*, 471 F.3d at 1259. The court need only "weigh the relevant equities," always "keep[ing] in mind the interests of the defendant." *McBride*, 189 F. App'x at 877-78 (quotation marks omitted). While no "specific formula" governs that analysis, relevant factors include "the stage of the proceedings (the further along the litigation, the more prejudice to the defendant); the purpose of the voluntary dismissal (if the purpose is to avoid an adverse determination on the merits of the action then voluntary dismissal should generally be denied); and its effect on discovery deadlines." *Macort v. Prem, Inc.*, 2005 WL 8151794, at *4 (11th Cir. Mar. 29, 2005) (per curiam) (cleaned up). Other circuits have identified similar factors. *E.g.*, *Mitchell v. Roberts*, 43 F.4th 1074, 1083 (10th Cir. 2022); *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987).

These factors can support the denial of dismissal without prejudice in a variety of circumstances. For example, this Court has held that district courts may deny Rule 41(a)(2) motions when "considerable time ha[s] been expended and expenses incurred," such as "the time that ha[s] passed since the case was filed, the many motions filed, and the discovery produced." *McBride*, 189 F. App'x at 878; *see also Mosley v. JLG Indus., Inc.*, 189 F. App'x 874, 876 (11th Cir. 2006) (per curiam) (same). Even Base-Cavacini concede that "time and effort expended by a defendant are valid considerations" for denying a Rule 41(a)(2) motion. Base-Cavacini.Br.11-12 (quoting *Holcomb*, 2012 WL 12868404, at *1). A court may also deny a Rule 41(a)(2) motion "filed while [dispositive] motions [are] pending" as "motivated to avoid an expected adverse ruling." *McBride*, 189 F. App'x at 878 (quotation marks omitted); *Mosley*, 189 F. App'x at 876.

Other circuits agree that courts may deny Rule 41(a)(2) motions filed late in a case, after numerous proceedings have occurred. *See U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003) (affirming denial of Rule 41(a)(2) motion filed "nine months after filing suit," after "[b]oth sides had filed responsive pleadings in addition to motions to

compel, motions for expedited hearing, motions to dismiss, motions for oral arguments, and a motion for rehearing" and "had attended several conferences for purposes of scheduling discovery"); *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 621 (6th Cir. 1999) (affirming denial when "the court and parties 'spent years preparing' the case"); *Paturzo v. Home Life Ins. Co.*, 503 F.2d 333, 335-36 (4th Cir. 1974) (per curiam) (affirming denial based on "the advanced stage of the proceedings" (cleaned up)). The circuits also agree that "a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996); *see Mentor Worldwide*, 998 F.3d at 805 (affirming denial when plaintiff's "motive is to avoid an adverse judgment in an unfavorable forum"); *Maxum Indem. Ins. Co. v. A-1 All Am. Roofing Co.*, 299 F. App'x 664, 666 (9th Cir. 2008) (holding court may deny dismissal without prejudice when "plaintiff is requesting a voluntary dismissal only to avoid a near-certain adverse ruling").

The same considerations support the district court's denial of Base-Cavacini's Rule 41(a)(2) motion. Base-Cavacini filed their motion more than two years into their case, after: extensive discovery on common

issues that benefitted all Plaintiffs; thousands of docket entries; and substantive rulings on motions to dismiss, *Daubert* motions on the Designated-Cancer Plaintiffs' experts, and motions for summary judgment on the Designated-Cancer Plaintiffs' claims. Indeed, they filed their motion only after missing the deadline to oppose Defendants' Rule 41(b) motion. The "age of this MDL," MDL.Dkt.6766:6, along with the extensive resources the court and Defendants had already expended, demonstrated sufficient prejudice to Defendants to deny Base-Cavacini's motion. *McBride*, 189 F. App'x at 878; *Mosley*, 189 F. App'x at 876.[5]

In addition, as explained above, the circumstances indicate that Base-Cavacini's motion was motivated by forum-shopping and avoiding an adverse decision on the merits of their claims. *Supra* p. 28. That fact

---

[5] *See also Bayshore*, 471 F.3d at 1259 (affirming denial of Rule 41(a)(2) motion because "extensive discovery had concluded"); *Stephens v. Ga. Dep't of Transp.*, 134 F. App'x 320, 323 (11th Cir. 2005) (per curiam) (affirming denial of motion filed two years after complaint, after "numerous motions had been filed, extensive discovery had been produced, and motions for summary judgement were pending"); *Fisher*, 940 F.2d at 1503 (affirming denial based on "the time and expense already spent on discovery and trial preparation"); *Holcomb*, 2012 WL 12868404, at *1 (denying motion when "action ha[d] been pending for nearly eighteen months," the "[d]efendant ha[d] invested considerable resources in its resolution," and the court "ha[d] already drawn legal conclusions in [d]efendant's favor that ha[d] resolved a significant number of issues").

further justifies denial of their motion. *McBride*, 189 F. App'x at 878; *Mosley*, 189 F. App'x at 876; *Mentor Worldwide*, 998 F.3d at 805; *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 951 (8th Cir. 1999).

Finally, even if the district court had granted Base-Cavacini's motion for voluntary dismissal, it was not required to do so *without* prejudice. "When a plaintiff asks the district court to dismiss her lawsuit under Rule 41(a)(2), the court has the discretion to choose between dismissing the suit with prejudice or without it." *Macort*, 2005 WL 8151794, at *3; *see Mentor Worldwide*, 998 F.3d at 805 (affirming dismissal with prejudice after plaintiff moved for voluntary dismissal without prejudice); *Perkins v. MBNA Am.*, 43 F. App'x 901, 902 (6th Cir. 2002) (same); *Hobbs*, 1999 WL 156045, at *1-2 (same). And for all the reasons already discussed, the district court properly found that dismissal *with* prejudice was appropriate here. MDL.Dkt.6766:6-7; *supra* pp. 26-30. In no event were Base-Cavacini entitled to dismissal without prejudice.

## CONCLUSION

The Court should affirm the district court's judgment.

Respectfully submitted,

s/ Paul Alessio Mezzina

Joseph G. Petrosinelli
Amy Mason Saharia
Anne E. Showalter
Libby A. Baird
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000
jpetrosinelli@wc.com
asaharia@wc.com
ashowalter@wc.com
lbaird@wc.com

*Counsel for Pfizer Inc.*

Jay P. Lefkowitz
KIRKLAND & ELLIS, LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jleftkowitz@kirkland.com

Cole Carter
KIRKLAND & ELLIS, LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-1951
cole.carter@kirkland.com

*Counsel for GlaxoSmithKline
LLC, GlaxoSmithKline Holdings
(Americas) Inc., and
GlaxoSmithKline PLC*

Paul Alessio Mezzina
Joshua N. Mitchell
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
pmezzina@kslaw.com
jmitchell@kslaw.com

Madison H. Kitchens
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, GA 30309
(404) 572-4600
mkitchens@kslaw.com

Matthew V.H. Noller
KING & SPADING LLP
50 California Street
Suite 3300
San Francisco, CA 94111
(415) 318-1200
mnoller@kslaw.com

*Counsel for Boehringer
Ingelheim Pharmaceuticals, Inc.,
Boehringer Ingelheim
Corporation, Boehringer
Ingelheim USA Corporation*

Steven Reitenour
BOWMAN & BROOKE LLP
150 South 5th Street, #3000
Minneapolis, MN 55402
(612) 672-3255
steve.reitenour
@bowmanandbrooke.com

*Counsel for Patheon
Manufacturing Services LLC*

Donald R. McMinn
HOLLINGSWORTH, LLP
1350 1 Street NW
Washington, DC 20005
(202) 898-5800
dmcminn@hollingsworthllp.com

*Counsel for Sandoz Inc.*

Sarah E. Johnston
Robyn S. Maguire
Kian J. Hudson
BARNES & THORNBURG, LLP
2029 Century Park East
Suite 300
Los Angeles, CA 90067
(310) 284-3798
sarah.johnston@btlaw.com
robyn.maguire@btlaw.com
kian.hudson@btlaw.com

*Counsel for CVS Pharmacy, Inc.
and BJ's Wholesale Club
Holdings, Inc.*

Ilana H. Eisenstein
Rachel A.H. Horton
M. David Josefovits
DLA PIPER LLP (US)
1650 Market Street
Suite 5000
Philadelphia, PA 19103
(215) 656-2431
Ilana.eisenstein@usdlapiper.com
rachel.horton@usdlapiper.com
david.josefovits@us.dlapiper.com

Samantha L. Chaifetz
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4082
samantha.chaifetz
@us.dlapiper.com

Daniel S. Pariser
Sally L. Pei
ARNOLD & PORTER KAY
SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
Daniel.pariser@arnoldporter.com
sally.pei@arnoldporter.com

*Counsel for Sanofi-Aventis U.S.
LLC, Sanofi US Services, Inc.,
and Chattem, Inc.*

Terry Henry
Melissa F. Murphy
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5334
THenry@BlankRome.com
MFMurphy@BlankRome.com

*Counsel for Apotex Corp.*

Kevin M. Bandy
UB GREENSFELDER LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 698-5000
kbandy@ubglaw.com

*Counsel for Aurobindo
Pharma USA, Inc.*

John R. Ipsaro
UB GREENSFELDER LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 698-5104
jipsaro@ubglaw.com

*Counsel for Dr. Reddy's
Laboratories, Inc.*

Richard M. Barnes
Sean Gugerty
GOODELL DEVRIES
LEECH & DANN, LLP
One South Street
20th Floor
Baltimore, MD 21202
(410) 783-4000
rmb@gdldlaw.com
sgugerty@gdldlaw

*Counsel for L. Perrigo*
*Company*

Asher A. Block
LEWIS BRISBOIS BISGAARD
& SMITH LLP
550 E. Swedesford Road
Suite 270
Wayne, PA 19087
(215) 977-4100
asher.block@lewisbrisbois.com

*Counsel for Granules USA, Inc.*
*and Granules India Ltd*

John W. Eichlin
Douglas M. Tween
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
john.eichlin@linklaters.com
douglas.tween@linklaters.com

*Counsel for Strides Pharma, Inc.*
*and Strides Pharma*
*Global Pte. Ltd.*

Clifford Katz
KELLEY DRYE
& WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800
ckatz@kelleydrye.com

*Counsel for Wockhardt Ltd.*

July 25, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 6,657 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Date: July 25, 2024

*s/Paul Alessio Mezzina*
Paul Alessio Mezzina

*Counsel for Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, Boehringer Ingelheim USA Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2024, the foregoing was filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will cause a notice of electronic filing to be served on all registered counsel of record.

<u>s/Paul Alessio Mezzina</u>
Paul Alessio Mezzina

*Counsel for Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, Boehringer Ingelheim USA Corporation*