# In the United States Court of Appeals for the Eleventh Circuit

IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION

ELAINE HARRELL,
*Plaintiff-Appellant*,

*v.*

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., *et al.*,
*Defendants-Appellees.*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA,
NOS. 9:20-MD-2924; 9:21-CV-82174
THE HONORABLE ROBIN LEE ROSENBERG*

## BRIEF FOR BRAND DEFENDANTS-APPELLEES

ILANA H. EISENSTEIN
RACHEL A.H. HORTON
M. DAVID JOSEFOVITS
DLA PIPER LLP (US)
  1650 Market St., Ste. 5000
  Philadelphia, PA 19103
  (215) 656-2431

SAMANTHA L. CHAIFETZ
DLA PIPER LLP (US)
  500 Eighth St., NW
  Washington, DC 20004
  (202) 799-4082

DANIEL S. PARISER
SALLY L. PEI
ARNOLD & PORTER
  KAYE SCHOLER LLP
  601 Massachusetts Ave., NW
  Washington, DC 20001
  (202) 942-5000

*Counsel for Sanofi-Aventis U.S. LLC, Sanofi US Services, Inc., and Chattem, Inc.*

*(Additional counsel on inside cover)*

Paul Alessio Mezzina
Joshua N. Mitchell
King & Spalding, LLP
  1700 Pennsylvania Ave., NW
  Ste. 900
  Washington, DC 20006
  (202) 626-8972

Madison Kitchens
King & Spalding, LLP
  1180 Peachtree St., NE
  Ste. 1600
  Atlanta, GA 30309
  (404) 572-2712

Matthew V.H. Noller
King & Spalding, LLP
  50 California St., Ste. 3300
  San Francisco, CA 94111
  (415) 318-1200

Counsel for Boehringer Ingelheim
Pharmaceuticals, Inc., Boehringer
Ingelheim Corporation, and
Boehringer Ingelheim USA
Corporation


Joseph G. Petrosinelli
Amy Mason Saharia
Anne E. Showalter
Libby A. Baird
Williams & Connolly LLP
  680 Maine Avenue, SW
  Washington, DC 20024
  (202) 434-5000

Counsel for Pfizer Inc.

Jay P. Lefkowitz
Kirkland & Ellis, LLP
  601 Lexington Ave.
  New York, NY 10022
  (212) 446-4800

Cole Carter
Kirkland & Ellis, LLP
  333 West Wolf Point Plaza
  Chicago, IL 60654
  (312) 862-1951

Counsel for GlaxoSmithKline
LLC, GlaxoSmithKline Holdings
(Americas) Inc., and
GlaxoSmithKline PLC


Steven Reitenour
Bowman & Brooke LLP
  150 S 5th St. #3000
  Minneapolis, MN 55402
  (612) 672-3244

Counsel for Patheon
Manufacturing Services LLC

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Brand Defendants-Appellees hereby certify that the jointly filed Certificate of Interested Persons remains correct, except for the following additional interested persons:

1. Baird, Libby A., *Counsel for Defendant-Appellee Pfizer Inc.*;

2. Boehringer Ingelheim Auslandsbeteiligungs GmbH, *Parent company of Defendant Boehringer Ingelheim USA Corporation*;

3. Josefovits, M. David, *Counsel for Defendants-Appellees Sanofi-Aventis U.S. LLC, Sanofi US Services, Inc., and Chattem, Inc.*;

4. Mitchell, Joshua N., *Counsel for Defendants-Appellees Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, and Boehringer Ingelheim USA Corporation*;

5. Noller, Matthew V.H., *Counsel for Defendants-Appellees Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, and Boehringer Ingelheim USA Corporation*;

6. Pariser, Daniel S., *Counsel for Defendants-Appellees Sanofi-Aventis U.S. LLC, Sanofi US Services, Inc., and Chattem, Inc.*; and

7. Reitenour, Steven, *Counsel for Patheon Manufacturing Services LLC.*

JULY 25, 2024

/s/ *Daniel S. Pariser*
DANIEL S. PARISER


/s/ *Jay P. Lefkowitz*
JAY P. LEFKOWITZ


/s/ *Paul Alessio Mezzina*
PAUL ALESSIO MEZZINA


/s/ *Steven Reitenour*
STEVEN REITENOUR


/s/ *Amy Mason Saharia*
AMY MASON SAHARIA

## STATEMENT REGARDING ORAL ARGUMENT

Brand Defendants-Appellees do not oppose Plaintiff's request for oral argument. *See* 11th Cir. R. 28-1(c). Oral argument will assist the Court in resolving the issues raised in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT ................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT .................................... i

TABLE OF CONTENTS ............................................................. ii

JURISDICTIONAL STATEMENT ........................................... xii

INTRODUCTION ................................................................ 1

STATEMENT OF THE ISSUE ................................................ 2

STATEMENT OF THE CASE ................................................. 3

    A.   Zantac's Regulatory History ................................... 3

    B.   The Zantac MDL ................................................... 3

    C.   Plaintiff Harrell's Complaint ................................. 6

    D.   Brand Defendants' Removal ................................... 9

    E.   Dismissal of the Complaint ................................. 12

STANDARD OF REVIEW ...................................................... 14

SUMMARY OF THE ARGUMENT ........................................... 14

ARGUMENT ........................................................................ 17

I.   The District Court Correctly Held That Plaintiff Stated No Possible Claim Against Schnucks Under Missouri Law ............... 19

    A.   The Innocent Seller Statute Shields Retailers from Products Liability Claims Based on Their Status as Seller in the Stream of Commerce ......................... 19

    B.   Missouri Law Does Not Recognize Negligence Claims Based on Retailers' Status as Sellers in the Stream of Commerce .......................................................... 21

C.    The District Court Properly Held That Plaintiff Pleaded No Facts Supporting Schnucks' Liability Beyond Its Selling Ranitidine in the Stream of Commerce ...................... 24

    1.    Plaintiff has not adequately alleged knowledge .......... 24

    2.    Plaintiff has not alleged that Schnucks' storage or handling of ranitidine products was negligent ............ 30

    3.    The decision below is consistent with the approach of other federal courts ..................................................... 31

II.    Plaintiff's Procedural Arguments Do Not Defeat Application of the Innocent Seller Statute ........................................................ 35

III.    Schnucks Was Fraudulently Joined Because Federal Law Preempts Plaintiff's Claims Against Schnucks ............................ 41

IV.    The District Court's Rule 41(b) Dismissal Stands Regardless of Subject Matter Jurisdiction ......................................................... 46

CONCLUSION ......................................................................................... 50

CERTIFICATE OF COMPLIANCE ......................................................... 52

CERTIFICATE OF SERVICE .................................................................. 53

# TABLE OF CITATIONS

**Cases**                                                                                              **Page(s)**

*Access Now, Inc. v. Sw. Airlines Co.,*

    385 F.3d 1324 (11th Cir. 2004)............................................................ 46

*Anderson v. R.J. Reynolds Tobacco Co.,*

    549 F. Supp. 3d 979 (E.D. Mo. 2021)................................................. 40

*Bayer v. Boehringer Ingelheim Pharms., Inc.,*

    No. 3:21-cv-01084-SPM (S.D. Ill. Sept. 15, 2021) ............................ 35

*Ben E. Keith Co. v. Dining All., Inc.,*

    80 F.4th 695 (5th Cir. 2023) ............................................................... 48

*Berber v. Wells Fargo Bank, N.A.,*

    760 F. App'x 684 (11th Cir. 2019) ....................................................... 18

*Block v. Toyota Motor Corp.,*

    665 F.3d 944 (8th Cir. 2011)................................................................ 40

*Brazil v. Janssen Research & Dev. LLC,*

    196 F. Supp. 3d 1351 (N.D. Ga. 2016)................................................ 43

*Cabalceta v. Standard Fruit Co.,*

    883 F.2d 1553 (11th Cir. 1989)............................................................ 18

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,*

    148 F.3d 1080 (D.C. Cir. 1998) ........................................................... 48

*Carleton v. R.J. Reynolds Tobacco,*

    No. 4:06-cv-00395-GAF (W.D. Mo. Nov. 20, 2006) ............................ 39

*Crowe v. Coleman,*

    113 F.3d 1536 (11th Cir. 1997) ........................................................... 18

*Dart Cherokee Basin Operating Co., LLC v. Owens,*

    574 U.S. 81 (2014) ................................................................................ 37

*In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.,*

    756 F.3d 917 (6th Cir. 2014) ........................................................ 43, 44

*El v. AmeriCredit Fin. Servs., Inc.,*

    710 F.3d 748 (7th Cir. 2013) ............................................................... 48

*Erie v. Tompkins,*

    304 U.S. 64 (1938) ................................................................................ 39

*Ernst v. Rising,*

    427 F.3d 351 (6th Cir. 2005) ............................................................... 48

*\* In re Exxon Valdez,*

    102 F.3d 429 (9th Cir. 1996) ........................................................ 47, 49

*Ford v. R.J. Reynolds Tobacco Co.*,

    2021 WL 270454 (E.D. Mo. Jan. 27, 2021) ......................................... 40

*In re Fosamax Prods. Liab. Litig. (No. II)*,

    2012 WL 181411 (D.N.J. Jan. 17, 2021) ............................................. 43

*Garretson v. Dr. Reddy's Lab'ys, Inc.*,

    No. 3:21-CV-01366 (S.D. Ill. Nov. 16, 2021) ................................. 34, 35

\* *Gramex Corp. v. Green Supply, Inc.*,

    89 S.W.3d 432 (Mo. 2002) ............................................................. 19, 20

*Graves v. Berkowitz*,

    15 S.W.3d 59 (Mo. App. W.D. 2000) ..................................................... 28

\* *Griffin v. Kandi Techs. Corp.*,

    454 S.W.3d 341 (Mo. Ct. App. 2014) .......................................22-24, 27

*Henderson v. Ford Motor Co.*,

    340 F. Supp. 2d 722 (N.D. Miss. 2004).................................................. 39

*Henderson v. Washington National Ins. Co.*,

    454 F.3d 1278 (11th Cir. 2006)............................................................. 29

*Hernandez v. Conriv Realty Assocs.*,

    182 F.3d 121 (2d Cir. 1999) ................................................................. 48

*Hyde v. Irish,*

    962 F.3d 1306 (11th Cir. 2020) ............................................. 48

*ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,*

    854 S.W.2d 371 (Mo. 1993) .................................................. 25

*Justice v. Rural King Holdings, LLP,*

    2022 WL 2904141 (E.D. Mo. July 22, 2022) ........................ 38

\* *Legg v. Wyeth,*

    428 F.3d 1317 (11th Cir. 2005) .......................... xii, 17, 18, 45

*Letz v. Turbomeca Engine Corp.,*

    1993 WL 469182 (W.D. Mo. Nov. 15, 1993) ........................ 39

*Lott v. Chickasaw Equipment Co.,*

    352 F. Supp. 2d 749 (N.D. Miss. 2005) ................................ 39

*Mahone v. Ray,*

    326 F.3d 1176 (11th Cir. 2003) ............................................. 48

\* *Malone v. Schapun, Inc.,*

    965 S.W.2d 177 (Mo. Ct. App. 1997) ............................... 20-23

\* *Mutual Pharm. Co. v. Bartlett,*

    570 U.S. 472 (2013) ...................................................... 42, 44

*In re Orthopedic "Bone Screw" Prods. Liab. Litig.*,

    132 F.3d 152 (3d Cir. 1997) ................................................................ 48

\* *PLIVA Inc. v. Mensing*,

    564 U.S. 604 (2011) ........................................................................ 41-42

*PNC Bank, Nat'l Ass'n v. MAC Meetings & Events, LLC*,

    2020 WL 3578574 (E.D. Mo. July 1, 2020) ........................................ 25

*Pub. v. Transit Cas. Co.*,

    43 S.W.3d 293 (Mo. 2001) ................................................................ 25

*Restivo v. Bank of Am. Corp.*,

    618 F. App'x 537 (11th Cir. 2015) .................................................... 18

*Royalty Network, Inc. v. Harris*,

    756 F.3d 1351 (11th Cir. 2014) ........................................................ 38

*Scofield v. WSTR Holdings, Inc.*,

    2021 WL 1176390 (E.D. Mo. Mar. 29, 2021) .................................... 40

*Smith v. Teva Pharm. USA, Inc.*,

    437 F. Supp. 3d 1159 (S.D. Fla. 2020) ............................................ 43

*Sparks v. PNC Bank*,

    400 S.W.3d 454 (Mo. Ct. App. 2013) ........................................... 28-29

\* *Spears v. Bayer Corp*,

    2004 WL 7081940 (W.D. Mo. Mar. 29, 2004) .......................... 33, 37, 39

*State Conference of Nat'l Ass'n for Advancement of Colored*

    *People v. State*,

    563 S.W.3d 138 (Mo. Ct. App. 2018) .................................................. 24

\* *Stillwell v. Allstate Ins. Co.*,

    663 F.3d 1329 (11th Cir. 2011) ......................................... 18, 24, 29, 30

*Thomas v. Brown & Williamson Tobacco Corp.*,

    2006 WL 1194873 (W.D. Mo. Apr. 28, 2006) ................................. 32-33

*Thomas v. Cooper Lighting, Inc.*,

    506 F.3d 1361 (11th Cir. 2007) ........................................................... 41

*Thompson v. R.J. Reynolds Tobacco Co*,

    2020 WL 5594072 (E.D. Mo. Sept. 18, 2020) ................................. 37-38

*Ullah v. BAC Home Loans Serv. LP*,

    538 F. App'x 844 (11th Cir. 2013) ...................................................... 30

*Univ. of S. Ala. v. Am. Tobacco Co.*,

    168 F.3d 405 (11th Cir. 1999) .............................................................. 14

*Welkener v. Kirkwood Drug Store Co.*,

    734 S.W.2d 233 (Mo. Ct. App. 1987) .................................................. 21

\* *Wichmann v. Proctor & Gamble Mfg. Co.*,

    2006 WL 3626904 (E.D. Mo. Dec. 11, 2006) .................11, 31-32, 33-34

*Wieland v. Owner-Operator Servs., Inc.*,

    540 S.W.3d 845 (Mo. 2018) ...........................................................23, 27

*Williams v. Best Buy Co.*,

    269 F.3d 1316 (11th Cir. 2001)............................................................ 14

\* *Willy v. Coastal Corporation*,

    503 U.S. 131 (1992) .......................................................................46-49

*In re Yasmin and Yaz (Drospirenone) Mktg., Sales Pracs. &*

    *Prods. Liab. Litig.*,

    2015 WL 7272766 (S.D. Ill. Nov. 18, 2015)........................................ 44

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,

    437 F. Supp. 3d 1368 (J.P.M.L. 2020) ................................................. 4

*Zow v. Regions Financial Corp.*,

    595 F. App'x 887 (11th Cir. 2014) ..................................................... 49

## Statutes

28 U.S.C. § 1332..................................................................................xiii

28 U.S.C. § 1446(a) ..........................................................................36-37

21 U.S.C. § 352(j) ................................................................................. 43

Mo. Ann. Stat. § 537.762 (West 2019) ................................................ 19, 39

## Other Authorities

21 C.F.R. § 314.71(a) ................................................................. 42

Restatement (Second) of Torts § 12 (1965).................................22-23, 27

Restatement (Second) of Torts § 344 (1965)...........................................27

Restatement (Second) of Torts § 402 (1965)...........................................22

Fed. R. Civ. P. 11 .................................................................. 47, 48

Fed. R. Civ. P. 37 .................................................................. 48

Fed. R. Civ. P. 41 ........................................................ 13, 17, 46, 49, 50

## JURISDICTIONAL STATEMENT

Plaintiff correctly identified the basis for this Court's appellate jurisdiction. Harrell.Br.2. The district court had subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and all properly joined parties are completely diverse. That Plaintiff and Defendant Schnucks are both residents of Missouri does not defeat complete diversity because, as the district court correctly held, Schnucks was fraudulently joined. *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005).

# INTRODUCTION

Plaintiff Elaine Harrell fraudulently joined a local grocery store chain to avoid federal jurisdiction over her claim that she developed cancer after purchasing and ingesting Zantac. In addition to the manufacturers of Zantac, Plaintiff (a Missouri resident) also sued Schnuck Markets, Inc. ("Schnucks"), a Missouri grocery store where she claims to have purchased Zantac. Plaintiff alleges that Schnucks must have known that Zantac was contaminated with a chemical called N-nitrosodimethylamine ("NDMA") based on a handful of obscure scientific literature references, and that—despite FDA's approval of the product for almost 40 years—the grocery store chain should have pulled the product from store shelves.

Plaintiff cannot prevail against Schnucks on this theory under well-settled Missouri law. Through the innocent seller statute, the Missouri legislature made the deliberate policy choice to shield retailers from strict liability for their role as sellers of products in the stream of commerce, at least where injured parties can obtain recovery from other named defendants. Complementing that statute, Missouri law imposes no duty of care on retailers to investigate or test the items they sell to determine

whether those products contain some unknown defect. To establish liability against Schnucks, Plaintiff must therefore allege some *affirmative* wrongdoing on the grocer's part.

On appeal, Plaintiff insists that she has done so, on the theory that the grocery chain employed a "chief medical officer" who monitored the scientific literature, which purportedly contained information about the dangers of the drug. But, as the district court found, Plaintiff failed to plead any facts that could establish that Schnucks actually knew of the scattered literature she cites, as Missouri law requires. More broadly, as the district court properly understood, Missouri law does not impose on Schnucks the duty to infer from medical literature that Zantac is dangerous, second-guess FDA's expert determination otherwise, and refuse to sell it. The district court correctly held that Schnucks was fraudulently joined, and this Court should affirm.

## STATEMENT OF THE ISSUE

Whether the district court correctly held that Schnucks was fraudulently joined, and therefore that its presence in the suit should be disregarded for purposes of determining diversity jurisdiction.

**STATEMENT OF THE CASE**

### A.    Zantac's Regulatory History

The U.S. Food and Drug Administration ("FDA") first approved the New Drug Application ("NDA") for the sale of prescription ranitidine—a histamine antagonist that reduces stomach acid—under the trade name "Zantac" in 1983. *See* Harrell.Dkt.3 ("Compl.") ¶ 48.[1] In the more than 35 years Zantac was on the market, FDA reviewed the safety and efficacy of Zantac many times, approving additional indications, dosages, and formulations. *See id.* ¶¶ 48, 50-51, 55, 72. In 1995, Zantac became available without a prescription. *Id.* ¶ 51. The NDA for brand-name over-the-counter ("OTC") Zantac was transferred between Brand Defendants over the ensuing years: first from GSK to Pfizer in 1998; then from Pfizer to BI in 2006; and finally from BI to Sanofi in 2017. *Id.* ¶¶ 49-67.

### B.    The Zantac MDL

In September 2019, an online pharmacy, Valisure LLC, filed a citizen petition with FDA, reporting that its testing of certain ranitidine

---

[1] As in Plaintiff's opening brief, docket entries from this Court are cited as "Dkt.__," from the individual docket below as "Harrell.Dkt.__," and from the MDL docket below as "MDL.Dkt.__." The page numbers (which follow the colon) are those within the docket entry as assigned by the district court ECF system.

products revealed high levels of NDMA. *Id.* ¶ 129. Plaintiff alleges that NDMA is a human carcinogen. *Id.* ¶ 3. FDA conducted its own testing, which identified NDMA levels much lower than Valisure's in some ranitidine products, but some samples tested were still above conservative regulatory guidelines. *Id.* ¶ 136. In April 2020, FDA asked all ranitidine manufacturers to withdraw their products from the market. *Id.* ¶ 151.

Despite FDA's ongoing investigation into the presence of NDMA in ranitidine, numerous Plaintiffs initiated litigation alleging that their use of ranitidine caused them to develop cancer. The Judicial Panel on Multidistrict Litigation coordinated those cases for pre-trial purposes in February 2020. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020).

The history of the Zantac MDL is set forth in detail in Brand Defendants' brief in *Krause*. As relevant here, on April 2, 2020, the district court issued an order establishing a voluntary Census Registry (the "Registry") for individuals who had potential Zantac claims but did not yet wish to file a lawsuit. MDL.Dkt.547:10. Claimants received benefits from Registry participation, including tolling of the statute of

limitations. *Id.* at 13. In exchange, Registry Claimants "commit[ted] to filing any action relating to Zantac or any ranitidine products, if at all," in the MDL. *Id.* at 11. This federal filing requirement did not apply to "actions as to which a federal court would lack diversity jurisdiction" based on a "good faith belie[f]" that the Claimant "may have a valid claim against" a non-diverse defendant. *Id.*

Following establishment of the Registry, motions to dismiss claims in the MDL Plaintiffs' master personal-injury complaint ("MPIC") ensued. Retailer Defendants named in the MPIC prevailed in those motions. First, in a December 31, 2020 order, the district court dismissed with prejudice all strict liability and negligence claims against Retailer Defendants insofar as they were based on defective design or failure to warn. The district court explained: "The [Retailer] Defendants have no ability to alter a label or alter a drug's design; thus, claims against them premised on labeling and design are preempted." MDL.Dkt.2513:26.

The district court did, however, allow Plaintiffs to amend the master complaints to more expressly plead that Retailer Defendants were negligent based on the theory "that the Defendants should be held liable for storing ranitidine at an elevated temperature prohibited

by both federal law and state law." *Id.* at 35. The MDL Plaintiffs'
leadership filed an amended master personal-injury complaint
("AMPIC") asserting such a theory, *see* MDL.Dkt.2759 ¶¶ 2207-2224, but
the district court dismissed that claim with prejudice on June 30, 2021,
MDL.Dkt.3716:1. Among other reasons, the court held—in a decision
unchallenged on appeal—that MDL Plaintiffs' claim was implausibly
pled because it "d[id] not explain how any Defendant failed to ensure that
ranitidine was properly stored or how ranitidine was exposed to heat."
*Id.* at 13. As a result, *all* claims against *all* Retailer Defendants in the
Zantac MDL were dismissed with prejudice.

## C. Plaintiff Harrell's Complaint

Plaintiff-Appellant Elaine Harrell ("Plaintiff") claims—like
thousands of others—that she developed cancer after purchasing and
ingesting Zantac. *See generally* Harrell.Dkt.1. Ms. Harrell is represented
by the Keller Postman law firm, whose name partner Ashley Keller was
a member of Plaintiffs' leadership and Chair of the Law and Briefing
Committee in the MDL. *See* MDL.Dkt.685:13. Plaintiff voluntarily joined
the MDL Registry in November 2020. *See* MDL.Dkt.4924:5.

Despite having participated in the Registry for almost a year, approximately one month after the MDL Court's order dismissing the Retailer Defendants, on August 13, 2021, Plaintiff filed a complaint in the Circuit Court of the City of Saint Louis, Missouri. Plaintiff, a resident of Missouri, alleges that she ingested Zantac from 1992 through 2019 and, as a result, developed kidney cancer. Compl. ¶¶ 13, 14, 16, 18.

The thrust of Plaintiff's complaint is that Zantac was defectively designed (because the ranitidine molecule is unstable) and defectively labeled (for failing to warn about this defect). *See, e.g.*, *id*. ¶¶ 267, 272, 277-283, 305, 318-319, 322. Plaintiff asserts nine claims against GSK, BI, Pfizer, and Sanofi—the NDA holders of the branded product that she claims caused her injury (collectively, "Brand Defendants").[2]

In addition to Brand Defendants, Plaintiff also names as a defendant Schnuck Market, Inc., the local Missouri grocery store where Plaintiff claims to have purchased Zantac. *Id*. ¶ 15. Four of the Complaint's causes of action are asserted against Schnucks (as well as Brand Defendants): (1) Count II - Strict Liability - Design Defect; (2)

---

[2] Plaintiff also asserts these claims against Patheon, a contract manufacturer that Plaintiff alleges contracted with Sanofi. Compl. ¶ 33.

Count III - Negligence - Failure to Warn; (3) Count V - General Negligence; and (4) Count IX - Unjust Enrichment. Compl. ¶¶ 266-302; 317-337; 382-390. Each of the causes of action boils down to the contention that Zantac was defectively designed and labeled, and that Schnucks should be liable for selling it.

Had Plaintiff initially filed her case in federal court, all of her claims against Schnucks would have been dismissed as preempted under federal law pursuant to the district court's December 31, 2020 order dismissing claims against the Retailer Defendants. MDL.Dkt.2513:26. Plaintiff's complaint does not even attempt to allege the type of negligent "storage and transport" claim that the MDL Court held could survive preemption, if properly pleaded. *See supra* at pp. 5-6. Instead, Plaintiff merely alleges that Schnucks has "capitalized on the false sense of security generated by the brand-name manufacturers' assertions about the safety of Zantac by advertising, promoting, distributing, and offering for sale in its stores Zantac." Compl. ¶ 11. Plaintiff alleges that Schnucks did so even though it "knew or should have known, and had available to it information demonstrating that Zantac exposes the consumer to unsafe levels of NDMA, and that NDMA causes cancer." *Id.*

## D.    Brand Defendants' Removal

On September 13, 2021, Brand Defendants removed the case to the Eastern District of Missouri under the doctrine of fraudulent joinder. *See* Harrell.Dkt.1. Following transfer to the MDL, Harrell.Dkt.37, Plaintiff moved to remand, MDL.Dkt.4924. Brand Defendants opposed, arguing that Schnucks' citizenship should be disregarded because (1) federal law preempts all claims against Schnucks; and (2) Missouri's innocent seller statute precludes claims against Schnucks. *Id.*

The district court denied remand. The court agreed with Brand Defendants that the innocent seller statute precluded Plaintiff's claims against Schnucks, observing that, based on the allegations of the complaint, "Schnuck[s] has been sued solely for its role as a seller in the stream of commerce." MDL.Dkt.5166:4. In reaching its decision, the district court carefully considered and rejected each of Plaintiff's arguments that the innocent seller statute does not apply.

First, the district court rejected Plaintiff's argument that the statute should not apply because she might not be able to obtain "total recovery" from Brand Defendants. The court noted that "plaintiff does not argue that the brand-manufacturer Defendants lack the financial

ability to grant the Plaintiff a full recovery," and further observed that "it is beyond all doubt that the Defendant brand-manufacturers (which the Court declined to dismiss from the MDL) have the financial means to grant the Plaintiff a full recovery, should the Plaintiff prevail." *Id.* Instead, Plaintiff had pointed only to a "hypothetical possibility" that the manufacturers could be completely dismissed from the lawsuit. *Id.* at 5.

Second, the district court dispensed with Plaintiff's argument that the innocent seller statute did not apply because Schnucks "ha[d] more involvement in this case than just as a mere reseller through its knowledge of ranitidine's allegedly defective qualities." *Id.* Applying Missouri's "fact pleading" standards, the court held that Plaintiff's allegations were insufficient to establish that Schnucks knew of any defect. *Id.* at 6-7. Plaintiff had not "explicitly allege[d] *how* [Schnucks'] chief medical officer obtained actual knowledge that one of the many FDA-approved drugs it sold—ranitidine—was defective." *Id.* at 8-9 (emphasis added). The district court also noted that, "[h]istorically, other negligence claims against retailers in this MDL consisted of the allegation that retailers affirmatively disregarded room temperature

storage and transportation guidelines," but there was no such claim here. *Id.* at 9 n.8.

The court thus concluded that there was no possibility that the Complaint could state a claim against Schnucks:

> This Court rejects the Plaintiff's argument that because she has alleged Schnuck—a supermarket—employed a chief medical officer, Schnuck acquired the corresponding knowledge, expertise, and duty to independently disagree with the FDA's approval of ranitidine and refuse to sell the product, based upon studies in the scientific community readily available to the FDA. To the contrary, there is but one reasonable, non-conclusory, fair reading of the Plaintiff's Complaint, and that is that Schnuck had no participation in this case other than through the mere act of reselling ranitidine.

*Id.* at 9; *see also id.* at 8 ("The absurdity of requiring a *grocer* to test the products it sells and report to its customers the risks of all of those products establishes the lack of a reasonable basis in fact or law of a duty owed by [defendant] to Plaintiffs.") (quoting *Wichmann v. Proctor & Gamble Mfg. Co.*, 2006 WL 3626904, at *2 (E.D. Mo. Dec. 11, 2006) (internal citation and alterations omitted)).

Third, the court also addressed Brand Defendants' alternative fraudulent joinder argument based on preemption. *Id.* at 3-4. However, despite having previously held that defective design and failure-to-warn

claims against retailers are preempted, the court was not persuaded that there was "no possibility that a Missouri state court could find that the Plaintiff's claims avoid federal preemption." *Id.*

### E. Dismissal of the Complaint

In the meantime, as described in the Brand Defendants' brief in *Krause*, the parties engaged in extensive discovery relating to general causation. From more than a dozen types of cancer that plaintiffs in the MDL had asserted as injuries, Plaintiffs' Leadership ultimately chose to pursue claims relating only to five specific cancers ("Designated Cancers"). *See* MDL.Dkt.5147. Kidney cancer (Plaintiff's alleged injury here) was not one of the designated cancers. On December 6, 2022, the district court granted Brand Defendants' *Daubert* and summary judgment motions relating to Designated Cancers in their entirety. MDL.Dkt.6120.

On February 14, 2023, the district court entered Pretrial Order No. 81, which governed further proceedings for the Non-Designated Cancer cases, such as Plaintiff's. PTO 81 provided that, by April 12, 2023, "Individual Plaintiffs shall file a Notice of Non-Designated Cancers each Plaintiff intends to pursue, if any, and will certify his or her intent to

provide general causation expert reports on the Non-Designated Cancer(s)." MDL.Dkt.6271:2. PTO 81 warned that "[i]f any Plaintiff fails to meet the requirements and deadlines established by this Order, his or her action may be subject to dismissal with prejudice under Rule 41(b)." *Id*.

Plaintiff did not file a notice of intent to supply expert proof that ranitidine caused her kidney cancer. Brand Defendants accordingly moved to dismiss Plaintiff's case, as well as those of other "delinquent plaintiffs" for noncompliance with PTO 81. MDL.Dkt.6686. Plaintiff did not oppose. *See* MDL.Dkt.6734. On July 19, 2023, the district court dismissed the case with prejudice pursuant to Rule 41(b) for failure to prosecute her claim and comply with a court order. Harrell.Dkt.42:4-7.

This appeal followed. MDL.Dkt.6893. In her brief on appeal, Plaintiff contests only the district court's denial of her motion to remand; she does not assign error to the court's determination that she was delinquent, nor does she argue that dismissal with prejudice under Rule 41(b) was improper. *See* Harrell.Br.2.

## STANDARD OF REVIEW

Whether the district court correctly denied Plaintiff's motion to remand is a question of law subject to *de novo* review. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1318 (11th Cir. 2001); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 408 (11th Cir. 1999).

## SUMMARY OF THE ARGUMENT

I. Under Missouri's innocent seller statute, "a defendant whose liability is based solely on his status as a seller in the stream of commerce" is shielded from a products liability claim, as long as the plaintiff could obtain total recovery from another defendant who is properly before the court.

Plaintiff cannot bypass the innocent seller statute by arguing that it applies only to strict liability claims, and not her negligence claim against Schnucks. If avoiding the statute were as easy as re-labeling the selling of a defective product as negligence, the statute would be meaningless.

Rather, Missouri law squarely forecloses Plaintiff's theory of negligence, which is based solely on Schnucks' status as a seller. That is because Missouri courts impose no duty on retailers to discover latent defects in products they sell; a plaintiff seeking to hold a seller liable in

negligence must prove the seller had *actual* knowledge or was in *actual* possession of information from which he should have inferred the product was defective.

Plaintiff's complaint does not plead knowing wrongdoing. Missouri is a "fact pleading" state, and its courts disregard conclusory allegations. Yet the complaint is devoid of any non-conclusory, factual allegations that Schnucks actually knew or had information that Zantac contained NDMA. Nor does the complaint allege that Schnucks engaged in any other affirmative act that could serve as the basis for a negligence claim, such as improper storage or transport of ranitidine.

Other federal courts applying Missouri's innocent seller statute in similar circumstances have held that retailers were fraudulently joined, and the district court's conclusion here was fully in line with that precedent.

II. Unable to establish any substantive basis for Schnucks' liability, Plaintiff resorts to procedural arguments why the innocent seller statute should not apply. Plaintiff argues that Brand Defendants failed to submit proof that Plaintiff could obtain "full recovery" from them. Yet Plaintiff never contested the clear allegation in Brand Defendants' removal notice

that this requirement was satisfied. Brand Defendants were under no obligation to prove such an undisputed fact. Nor—as courts applying the statute have consistently held—can Plaintiff justify remand based on the hypothetical and speculative possibility that, at some point in the future, Plaintiff's strict liability claim against Retailer Defendants could be reinstated if Brand Defendants were no longer in the case. The district court properly rejected these procedural arguments as well.

III. The decision below can be affirmed on the alternative basis that federal law preempts Plaintiff's claims against Schnucks. In its prior decision dismissing claims against Retailer Defendants in the MDL, the district court correctly held—based on clear Supreme Court precedent— that state law claims for defective design or failure to warn are preempted because retailers have no authority to change a product's design or FDA-approved label. In considering Brand Defendants' fraudulent joinder arguments, however, the district court stated that its own rulings were "not so certain as to eliminate all possibility of doubt" that a Missouri state court judge could reach a different—and erroneous—conclusion. The bar for fraudulent joinder should not be set so high. To avail themselves of a federal forum, Brand Defendants should

not be required to show that there is no possibility that a state trial court would misapply binding Supreme Court precedent.

IV. Regardless of its ruling on subject-matter jurisdiction, the Court should affirm the district court's order dismissing Plaintiff's claims with prejudice under Rule 41(b). That dismissal was entered as a sanction against Plaintiff for her willful disobedience of court orders and failure to prosecute her case. And Plaintiff has failed to challenge the dismissal order here. Because that ruling was made pursuant to the Court's collateral sanctions authority and was not a merits determination, it stands even if subject-matter jurisdiction was lacking.

## ARGUMENT

This Court has long recognized that the "removal process was created by Congress to protect defendants." *Legg*, 428 F.3d at 1325. Accordingly, "[f]ederal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in Federal Court." *Id.* Indeed, "Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *Id.* (internal quotation marks omitted).

This Court has therefore repeatedly recognized the "well-established" rule that a plaintiff may not deny the defendant its right to a federal forum by "fraudulently" pleading claims against a resident defendant against whom there is "no possibility" to recover a judgment. *See, e.g.*, *id.* at 1324; *Berber v. Wells Fargo Bank, N.A.*, 760 F. App'x 684, 687-89 (11th Cir. 2019); *Restivo v. Bank of Am. Corp.*, 618 F. App'x 537, 540 (11th Cir. 2015); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).

When applying the "no possibility" standard, "the potential for legal liability [against the nondiverse defendant] must be reasonable, not merely theoretical." *Legg*, 428 F.3d at 1325 n.5. That is, there must be "a reasonable basis for predicting that the state law might impose liability on the facts involved." *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997). And "[t]o determine whether it is possible that a state court would find that the complaint states a cause of action, [the federal court] must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011). As

explained below, the district court faithfully applied these well-established standards to hold that Schnucks was fraudulently joined.

## I. The District Court Correctly Held That Plaintiff Stated No Possible Claim Against Schnucks Under Missouri Law

### A. The Innocent Seller Statute Shields Retailers from Products Liability Claims Based on Their Status as Seller in the Stream of Commerce

The Missouri innocent seller statute provides that "a defendant whose liability is *based solely on his status as a seller in the stream of commerce* may be dismissed from a products liability claim" where "another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim." Mo. Ann. Stat. § 537.762(1) (West 2019) (emphasis added). The innocent seller statute thus reflects a "substantive public policy choice of significant importance." *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 445 (Mo. 2002). As the Missouri Supreme Court has explained, "[i]t is clear that our legislature sought to protect 'innocent' wholesalers and retailers from the perils of products liability claims, both procedurally and substantively." *Id.* at 446.

The statute shifts "all liability of a downstream seller, who would otherwise be jointly and severally liable to plaintiff for damages and

subject to contribution from the other defendants … to upstream defendants, including the manufacturer," at least to the extent that the plaintiff could otherwise obtain "total recovery." *Id.* at 445; *see also Malone v. Schapun, Inc.*, 965 S.W.2d 177, 182 (Mo. Ct. App. 1997) (similar). While dismissal is "proper where the defendant's liability is based solely on its status as a seller in the stream of commerce," a "seller is still liable for its own negligence or other conduct other than its status as a seller in the stream of commerce." *Malone*, 965 S.W.2d at 182.

Plaintiff effectively concedes that, if the procedural requirements of the innocent seller statute are satisfied, the statute forecloses her strict liability claim against Schnucks as a substantive matter. *See* Harrell.Br. 18 (omitting any argument that the innocent seller statute does not apply to Count II, which is a strict liability claim). Plaintiff argues, however, that the statute applies only to "products liability claims," which the statute defines elsewhere as claims based on a theory of strict liability. *Id.* at 17-18. Thus, according to Plaintiff's theory, the innocent seller statute includes a gaping loophole: Plaintiffs can sue retailers for negligently selling allegedly defective products without alleging any

independently wrongful conduct merely by relabeling "products liability claims" as claims for negligence.

As explained below, Missouri's tort regime does not allow for such facile evasion of the innocent seller statute. Missouri case law clearly establishes that plaintiffs cannot hold retailers liable solely on the basis of their status as sellers of a defective product. Instead, to survive a motion to dismiss, a plaintiff must plausibly allege independently wrongful conduct—which Plaintiff has failed to do. Whether or not the innocent seller statute applies to negligence claims, the result is therefore the same: Plaintiff could not possibly prevail on a negligence claim under Missouri law.

### B. Missouri Law Does Not Recognize Negligence Claims Based on Retailers' Status as Sellers in the Stream of Commerce

Plaintiff cannot end-run the innocent seller statute by claiming that Schnucks was negligent for selling allegedly defective ranitidine. Missouri courts have made clear that retailers have no duty to discover or guard against latent defects in products they stock on their shelves. *See, e.g.*, *Malone*, 965 S.W.2d at 185-86; *Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 241 (Mo. Ct. App. 1987). Specifically, Missouri has

adopted Section 402 of the Restatement (Second) of Torts, which provides that "a seller of a product who neither knows nor has reason to know the product is dangerous is not liable in a negligence action for harm caused by the product's dangerous condition because of the seller's failure to discover the danger by an inspection or test of the product before selling it." *Malone*, 965 S.W.2d at 185-86. Thus, a retailer is not obligated to carry out its own investigation to independently assure the safety of products it sells.

It follows that a retailer is not liable because it allegedly "should have known" of a defect had it conducted such an inquiry. A plaintiff must instead prove "that the seller *knew* or had *reason to know* that the chattel is or is likely to be dangerous for the use for which it is supplied." *Griffin v. Kandi Techs. Corp.*, 454 S.W.3d 341, 347 (Mo. Ct. App. 2014) (citing *Malone*, 965 S.W.2d at 184) (emphases added). As the Restatement explains, "reason to know" is very different from "should have known," "in that 'reason to know' implies no duty of knowledge on the part of the actor whereas 'should know' implies that the actor owes another a duty of ascertaining the facts in question." Restatement (Second) of Torts § 12 cmt. a.

While "reason to know" does not require *actual* knowledge of the danger, it is very close. The actor must "*have information* from which a person of reasonable [or superior] intelligence … would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." *Malone*, 965 S.W.2d at 185-86 (quoting Restatement (Second), Section 12(1)) (emphasis added); *see also Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 849 (Mo. 2018) (explaining distinction between the "reason to know" and "should know" standards under the Restatement (Second) in the context of premises liability). Put differently, under the "reason to know" standard, "a duty of care arises *only after the business has information* from which a reasonable actor would infer those facts." *Wieland*, 540 S.W.3d at 849 (emphasis added).

Missouri courts have therefore rejected retailer liability where plaintiffs fail to establish that the seller was *actually aware* of information concerning the reported dangers. For example, in *Griffin*, the plaintiffs claimed that the seller of a go-kart should have known that the go-kart was dangerous, in part because a report titled "Go–Kart Related Injuries and Deaths to Children" was publicly available. 454 S.W.3d at

347. The court affirmed summary judgment for the seller because the plaintiffs had presented "no facts" showing the seller "had actual knowledge of the report." *Id*. at 348. The court was clear: "Scientific knowledge as shown by authoritative publications cannot be used to show knowledge on the part of a party without proof that the party had actual knowledge of the publication." *Id*.

## C. The District Court Properly Held That Plaintiff Pleaded No Facts Supporting Schnucks' Liability Beyond Its Selling Ranitidine in the Stream of Commerce

### 1. Plaintiff has not adequately alleged knowledge

The district court properly held that Plaintiff did not plead facts that would establish that Schnucks had either actual knowledge or "reason to know" that ranitidine contained unsafe levels of NDMA.

For purposes of the fraudulent joinder analysis, state pleading standards control. *Stillwell*, 663 F.3d at 1334. And as the district court properly recognized, Missouri is a fact pleading jurisdiction. "[U]nder Missouri pleading standards there must [be] factual allegations to support each element of a claim." MDL.Dkt.5166:7; *see, e.g.*, *State Conference of Nat'l Ass'n for Advancement of Colored People v. State*, 563 S.W.3d 138 (Mo. Ct. App. 2018). Missouri rules likewise "demand more

than mere conclusions that the pleader alleges without supporting facts."
*Pub. v. Transit Cas. Co.*, 43 S.W.3d 293, 302 (Mo. 2001). In Missouri,
"motions to dismiss for failure to state a claim have substantially more
'bite' under 'fact pleading' rules than they have under the federal system
of 'notice pleading.'" *ITT Commercial Fin. Corp. v. Mid–Am. Marine
Supply Corp.*, 854 S.W.2d 371, 379 (Mo. 1993); *see also PNC Bank, Nat'l
Ass'n v. MAC Meetings & Events, LLC*, 2020 WL 3578574, at *39 (E.D.
Mo. July 1, 2020) ("federal notice pleading is less stringent than Missouri
fact pleading").

Yet the only allegations in the Complaint concerning Schnucks'
alleged knowledge are wholly conclusory, generalized statements. *See,
e.g.*, Compl. ¶ 11 ("Schnucks knew or should have known, and had
available to it information demonstrating that Zantac exposes the
consumer to unsafe levels of NDMA, and that NDMA causes cancer.");
¶ 163 ("At the pertinent time, Schnucks was aware or should have been
aware that Plaintiff and the public at large have been and continue to be
exposed to deadly NDMA through their intended and reasonably

foreseeable use of Zantac).[3] None of these generic allegations identifies any particular piece of literature or information that Schnucks actually knew about or possessed. What is more, there is no unambiguous allegation of knowledge. Each of the allegations—even the conclusory ones—is framed in the disjunctive, i.e., that Schnucks either knew *or* should have known of NDMA contamination.

Without any specific or direct allegation of actual knowledge, Plaintiff's theory of Schnucks' knowledge therefore appears to be that, because there were allegedly "numerous studies" published about the dangers of NDMA, Schnucks *must* have been aware of the purported dangers of ranitidine-containing products. *See* Harrell.Br.19. The sole basis for attributing that knowledge to Schnucks is that Schnucks was "not just a supermarket offering in-store pharmacy services," but also provided "health and wellness information" to its consumers—and

---

[3] *See also* Compl. ¶¶ 174-78 (alleging that "Schnucks knew or should have known" that Zantac might contain NDMA based on publicly available "scientific, medical, and regulatory information"). Plaintiff's brief also cites to additional generic allegations about the knowledge of "Defendants," without any specific references to Schnucks. *See* Harrell.Br.19 (citing Compl. ¶¶ 321-23, 384). These allegations are even more conclusory and likewise allege only knowledge *or* that Defendants "should have known" of the presence of NDMA in ranitidine.

therefore Schnucks "researched, investigated, and monitored the medical and scientific literature," in particular by "employ[ing] a chief medical officer." *Id.*

This theory is insufficient under well-established Missouri law. As explained above, under Missouri's "reason to know" standard, the defendant must actually have received information identifying the danger. *See supra* at pp. 22-23; *Wieland*, 540 S.W.3d at 849; *Griffin*, 454 S.W.3d at 347; *see also* Restatement (Second) of Torts §§ 12(1), 344 (1965). The mere existence of scientific publications in the public domain is insufficient. *Griffin*, 454 S.W.3d at 347. But the Complaint contains no factual allegation that Schnucks' chief medical officer *actually received information* from which he or she had reason to know ranitidine was dangerous. As the district court pointed out, Plaintiff "could … have elected to *explicitly* allege how the chief medical officer obtained actual knowledge that one of the many FDA-approved drugs it sold— ranitidine—was defective, provided the Plaintiff had a basis to do so." MDL.Dkt.5166:8-9. But Plaintiff did not do so.

Plaintiff faults the district court for supposedly drawing "inferences in Defendants' favor" regarding FDA's awareness of the publicly

available studies Plaintiff cites. Harrell.Br.22-23. But it is Plaintiff's position that requires drawing unreasonable inferences. Plaintiff cites to four studies: a 20-year old study on contamination of drinking water published in the Journal of Environmental Engineering (*Mitch*); another wastewater study published in the Journal of Environmental Science and Technology (*La Roux*); and two 40-year-old studies by a group of Italian researchers (*Maura* and *de Flora*). Harrell.Br.19. It is unreasonable to infer that the chief medical officer of a grocery store chain must have been aware of these obscure references, and from them, should have concluded that FDA was wrong to have approved ranitidine and that the product was unsafe to sell. The district court was on sound footing for not entertaining such a series of facially implausible inferences. *See* MDL.Dkt.5166:7-9.[4]

---

[4] Plaintiff's "unjust enrichment" theory (which Plaintiff mentions in her brief only in passing, *see* Harrell.Br.13, 16, 17, 18) would fail in Missouri state court for similar reasons. To establish that a benefit conferred on a defendant was "unjust," a plaintiff must plead and prove that "wrongful conduct by the defendant contributed to the plaintiff's disadvantage." *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. App. W.D. 2000). For the reasons explained above, the Complaint does not adequately allege wrongful conduct, including that Schnucks knew of the purported dangers of ranitidine. *See Sparks v. PNC Bank*, 400 S.W.3d 454, 460 (Mo. Ct. App. 2013) ("Without finding that Respondents breached their duties

Finally, Plaintiff wrongly suggests that the district court should have forgone any close review of the complaint and simply accepted Plaintiff's conclusory pleading. *See* Harrell.Br.11. While fraudulent joinder involves a different standard of review from a motion to dismiss, the fraudulent joinder standard does not render state court pleading requirements irrelevant. On the contrary, "to determine whether it is possible that a state court would find that the complaint states a cause of action, [the federal court] must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards applicable in federal court." *Stillwell*, 663 F.3d at 1334.

The cases that Plaintiff cites demonstrate the point. In *Henderson v. Washington National Insurance Company*, 454 F.3d 1278 (11th Cir. 2006), this Court first ascertained the applicable state court pleading standard, and then parsed the complaint in light of those standards. The Court found that some "paragraphs of the complaint contain a more particularized and detailed description of events" and that as a result, "under the facts of this case, the precise contours of the pleading

---

to [the plaintiffs], we further cannot find that Respondents unjustly retained the benefits based on any breach, as alleged.").

requirements are not dispositive." *Id.* at 1283-84. Likewise, in *Stillwell* and *Ullah*, this Court first identified the applicable standards for Georgia pleadings (which required only notice pleading and permitted conclusory allegations), and then found the complaint sufficient under those lenient standards. *Stillwell*, 663 F.3d at 1334; *Ullah v. BAC Home Loans Serv. LP*, 538 F. App'x 844, 845-46 (11th Cir. 2013). The district court applied this same mode of analysis, and reached a different result here because it properly measured Plaintiff's Complaint against Missouri's more demanding fact pleading standards.

### 2. Plaintiff has not alleged that Schnucks' storage or handling of ranitidine products was negligent

Plaintiff's fallback argument that she adequately alleged that Schnucks negligently stored or handled ranitidine fails for the same reasons. Plaintiff contends that "the complaint alleges that ranitidine degrades into *more* NDMA in the presence of heat or humidity over time" and that Schnucks accordingly should have handled and stored ranitidine in some (unspecified) different fashion. Harrell.Br.20 (citing Compl. ¶ 149). Again, Plaintiff cites only to general allegations about the degradation of ranitidine (*see* Compl. ¶ 149) and conclusory allegations that "Defendants" (i.e., including Brand Defendants, the only defendants

who have held Zantac NDAs) knew "or should have known" of these purported hazards (*see* Compl. ¶¶ 321-23, 326, 331). Harrell.Br.20. Plaintiff never alleges that Schnucks stored or handled Zantac in a manner that would have exposed the product to higher heat or humidity or that violated FDA guidelines or labeling instructions.

As the district court noted, Plaintiff's claims varied materially from those in the federal AMPIC, which alleged that retailers failed to store and transport Zantac within the heat and humidity parameters specified by federal guidelines. *See* MDL.Dkt.5166:9 n.8. The AMPIC contained a specific count dedicated to this storage and handling theory, which MDL Plaintiffs included in an effort to avoid federal preemption. *See supra* at pp. 5-6. As a member of MDL leadership, Plaintiff's counsel knew how to plead such a storage and transport claim, but did not do so here.

### 3. The decision below is consistent with the approach of other federal courts

The district court's decision was fully in line with multiple other decisions applying Missouri's innocent seller statute to hold that retailer defendants are fraudulently joined. For example, in *Wichmann v. Proctor & Gamble Manufacturing*, plaintiffs joined nondiverse defendant sellers of tampons, pleading claims of strict liability and negligence against

them. 2006 WL 3626904 (E.D. Mo. Dec. 11, 2006). The court found both claims foreclosed by the innocent seller statute, explaining that "both the strict liability allegations and those sounding in negligence, are based on [the seller's] status as the seller of the tampons which allegedly caused the complained-of injuries." *Id.* at *2.

The court specifically rejected the plaintiffs' argument that they could pursue a theory of negligence based on the seller's "fail[ure] to test or observe the manner of use of the tampons, and fail[ure] to advise and warn Plaintiffs of the risks of overnight use of the tampons." *Id.* Rather, the court concluded that "there is no reasonable basis in law or fact which would impose a duty on the part of [seller defendants] … to inspect or test the tampons or to warn Plaintiffs of the risks involved in the use of the tampons." *Id.* Thus, both claims were "based solely on [defendants'] status as a seller in the stream of commerce," justifying dismissal under the innocent seller statute. *Id.*

Another Missouri district court held similarly in *Thomas v. Brown & Williamson Tobacco Corp.*, 2006 WL 1194873 (W.D. Mo. Apr. 28, 2006), a wrongful death case against cigarette manufacturers and Missouri cigarette sellers. There, the district court concluded that the innocent

seller statute precluded remand to state court, even where the plaintiffs had asserted claims of negligence against the Missouri defendants: "neither of the Missouri Defendants manufactured cigarettes," and their liability would therefore "be based upon the fact that they are a seller in the stream of commerce of the allegedly defective product." *Id.* at *3; *see also Spears v. Bayer Corp.*, 2004 WL 7081940, at *3 (W.D. Mo. Mar. 29, 2004) (dismissing nondiverse retailer under Missouri innocent seller statute and denying remand because "any theory of recovery against [defendant]," including breach of warranty, "would be based solely on [the Missouri seller's] status as a seller of the product in the stream of commerce").

Plaintiff does not even acknowledge *Thomas* or *Spears*, and her attempts to distinguish *Wichmann* fall flat. Plaintiff argues that the defective tampons were "still on the market and approved by the FDA, unlike ranitidine." Harrell.Br.24. During the relevant period in this case, however, ranitidine *was* on the market and *was* approved by the FDA. *See* Compl. ¶¶ 14-15 (alleging that Plaintiff purchased and used Zantac from 1992 to 2019); ¶¶ 94-107 (describing market withdrawal beginning in September 2019). Plaintiff next argues that in *Wichmann*, "[t]here

were no allegations that the defendant knew or should have known of the defects in the tampons." Harrell.Br.24. Not true. The *Wichmann* plaintiffs' complaint alleged that the defendant unlawfully "sold tampons which included rayon as a component part … when they knew, or should have known, that rayon … caused, allowed and permitted the colonization of bacteria which causes TSS … ." *Wichmann*, 2006 WL 3626904, at *1. And while Plaintiff claims that the theory of liability in *Wichmann* was "not negligent storage and transportation," neither is it here. *See supra* at p. 8.

Finally, Plaintiff contends that "these same defendants have argued that functionally similar innocent seller statutes apply to in-state retailers in other Zantac cases, and have lost every case except this one." Harrell.Br.20-21. But the cases that Plaintiff cites involved Illinois, not Missouri, law. *See* MDL.Dkt.4924:11-12 (*Bayer v. Boehringer Ingelheim Pharms., Inc.*, No. 3:21-cv-01084-SPM (S.D. Ill. Sept. 15, 2021)); *id*. at 13-22 (*Garretson v. Dr. Reddy's Lab'ys, Inc.*, No. 3:21-CV-01366-NJR (S.D. Ill. Nov. 16, 2021)). Neither case even mentions the innocent seller statute, and in one of those cases, Defendants did not even argue that

Illinois' innocent seller statute applied. *See Garretson v. Dr. Reddy's Laboratories, Inc.*, No. 3:21-cv-1366, ECF No. 14 (S.D. Ill. Nov. 12, 2021).

## II. Plaintiff's Procedural Arguments Do Not Defeat Application of the Innocent Seller Statute

As her Complaint fails to establish any substantive basis for liability under Missouri law, Plaintiff relies on claimed procedural improprieties and failures of proof to avoid the innocent seller statute. None of these arguments has merit.

***First***, Plaintiff argues that the Missouri innocent seller statute does not apply because Brand Defendants did not "prove that 'another defendant, including the manufacturer,' is in the lawsuit from whom plaintiff can obtain 'total recovery.'" Harrell.Br.24. But in their notice of removal, Brand Defendants affirmatively alleged that "the manufacturers of Zantac products at issue in this case are all properly before this Court" and, although they "vigorously deni[ed] the substance of Plaintiff's allegations, Plaintiff would be able to make a full recovery from the manufacturers." Harrell.Dkt.1 ¶ 60; *see also id.* ¶ 17 (similar). Plaintiff did not challenge these express allegations in her motion for remand. *See* MDL.Dkt.4924:3; MDL.Dkt.5166:5 ("The Plaintiff does not

argue that the brand-manufacturer defendants lack the financial ability to grant the Plaintiff a full recovery.").

Nor could she. Her complaint *affirmatively alleges* that the "manufacturer defendants" include defendants GlaxoSmithKline, Pfizer, Boehringer Ingelheim, and Sanofi, and even provides a chart detailing when those companies manufactured and sold branded Zantac. Compl. ¶ 67. Each Brand Defendant is a major, global pharmaceutical manufacturer with billions of dollars in annual sales, with which the court (and Plaintiff's counsel) was familiar from years of proceedings in the MDL. As the district court therefore correctly observed, "it is beyond all doubt that the Defendant brand-name manufacturers (which the Court declined to dismiss from the MDL) have the financial means to grant Plaintiff a full recovery, should the Plaintiff prevail." MDL.Dkt.5166:4.

Brand Defendants were under no obligation to prove these undisputed (and obviously true) facts. Section 1446(a) requires defendants only to file a removal petition containing a "short and plain statement" of the grounds for removal, not proof or evidence establishing all of the alleged facts. 28 U.S.C.A. § 1446(a). As the Supreme Court

explained in the context of the Class Action Fairness Act's amount-in-controversy requirement, a defendant must submit evidence supporting the allegations in its notice of removal "only when the plaintiff contests, or the court questions, the defendant's allegations." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Any other rule would require defendants to anticipate which of the removal allegations plaintiff will challenge, muster voluminous proof to support all of those allegations, and file it all with the district court, in lieu of the "short and plain statement" that the removal statute requires.

It is therefore unsurprising that no federal court has adopted the approach Plaintiff urges. Quite the opposite: in *Spears*, the district court found an uncontested allegation in the manufacturer's removal notice that it could satisfy a judgment in the plaintiff's favor as sufficient, and denied remand. 2004 WL 7081940, at *3.

The cases that Plaintiff cites (at 25) do not require a defendant to prove undisputed allegations to support removal. In *Thompson v. R.J. Reynolds Tobacco Company*, the plaintiff specifically argued in his motion to remand that defendants' averments about the manufacturer's ability to fully satisfy a judgment were not sufficient, but in the face of

that challenge, defendants "offered no evidence … to establish the point." 2020 WL 5594072, at *3 (E.D. Mo. Sept. 18, 2020). Similarly, in *Justice v. Rural King Holdings, LLP*, plaintiffs expressly argued that the seller defendant was not entitled to dismissal under the statute because it had "not shown that there [was] another defendant from whom they could obtain total recovery," and the seller failed to present evidence in response; instead, the seller merely "assure[d] the Court" that the remaining defendant was "sufficiently insured to compensate Plaintiffs for their claims." 2022 WL 2904141, at *3 (E.D. Mo. July 22, 2022). Here, in contrast, Plaintiff never disputed Brand Defendants' allegations that Plaintiff would be able to obtain a full financial recovery if she were to prevail on her claims.

Plaintiff nevertheless contends that Brand Defendants must show their ability to satisfy a judgment "through an affidavit, discovery, and a hearing," based on the text of the innocent seller statute. Harrell.Br.24. Under basic *Erie* principles, however, a federal court sitting in diversity "is to apply state substantive law and *federal* procedural law." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014) (emphasis added). Here, "the first two subsections of § 537.762 are substantive,

obligating this Court to apply those sections under *Erie v. Tompkins*, 304 U.S. 64 (1938), but … the remaining sections," including the discovery requirement, "are procedural." *Carleton v. R.J. Reynolds Tobacco*, No. 4:06-cv-00395-GAF, ECF No. 56 at 7 (W.D. Mo. Nov. 20, 2006); *see also Spears*, 2004 WL 7081940, at \*3 (similar); *Letz v. Turbomeca Engine Corp.*, 1993 WL 469182, at \*1 (W.D. Mo. Nov. 15, 1993) (discovery requirement is "clearly procedural" and "unnecessary" in federal court). Other federal courts have likewise observed that the "procedures for state courts to follow in considering motions by retailers to dismiss" pursuant to other states' innocent seller statutes "are not applicable in federal court." *Henderson v. Ford Motor Co.*, 340 F. Supp. 2d 722, 727 (N.D. Miss. 2004); *see also Lott v. Chickasaw Equipment Co.*, 352 F. Supp. 2d 749, 750 (N.D. Miss. 2005).

**Second**, the district court correctly rejected Plaintiff's speculation, Harrell.Br.26, that "a later development in the case," such as a "product identification defense" or an "unforeseen bankruptcy," could require Schnucks to be reinstated does not defeat a finding of fraudulent joinder. MDL.Dkt.5166:5. Numerous courts have held that the mere theoretical possibility of reinstatement does not foreclose a fraudulent joinder

finding. For example, the Eighth Circuit analyzed Minnesota's materially identical innocent seller statute in *Block v. Toyota Motor Corp.*, 665 F.3d 944 (8th Cir. 2011). The court held that the plaintiff "ha[d] failed to show any reasonable basis for finding that" the seller—there, a car dealer— might be reinstated, in the unlikely event that the car manufacturer (Toyota) might go bankrupt and be unable to pay a judgment. *Id.* at 949.[5] Federal district courts applying the Missouri statute have reached the same conclusion. *See Anderson v. R.J. Reynolds Tobacco Co.*, 549 F. Supp. 3d 979, 983-84 (E.D. Mo. 2021); *Scofield v. WSTR Holdings, Inc.,* 2021 WL 1176390, at \*4 (E.D. Mo. Mar. 29, 2021); *see also Ford v. R.J. Reynolds Tobacco Co.,* 2021 WL 270454, at \*3 (E.D. Mo. Jan. 27, 2021). Indeed, as the district court reasoned, to hold otherwise would mean that the Missouri innocent seller statute could *never* be the basis for a finding of fraudulent joinder. MDL.Dkt.5166:5, n.3.

---

[5] *Block* distinguished the Minnesota statute from the Missouri statute on the ground that the Missouri statute provided that the dismissed seller "remain[ed] a party for jurisdiction purposes," 665 F.3d at 949, but this provision was removed from the Missouri statute in 2019, *see Anderson*, 549 F. Supp. 3d at 983.

### III.  Schnucks Was Fraudulently Joined Because Federal Law Preempts Plaintiff's Claims Against Schnucks

The Court can also affirm on the independent, alternative ground that Plaintiff's claims against Schnucks are preempted. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

At their core, Plaintiff's claims against Schnucks are preempted for essentially the same reason why Missouri law does not impose liability: Schnucks did not manufacture or hold the regulatory license for ranitidine, but simply stocked the product on its shelves. As the district court separately held in December 2020 when dismissing claims against Retailer Defendants in the MDL, "[t]he [Retailer] Defendants have no ability to alter a label or alter the drug's design; thus, claims against them premised on the labeling and design are preempted." *See* MDL.Dkt.2513 ("Preemption Order").

The district court's Preemption Order as to design and labeling claims against retailers and distributors followed from a straightforward application of Supreme Court precedent. *See* MDL.Dkt.2513:24-25. In *PLIVA Inc. v. Mensing*, 564 U.S. 604 (2011), the Supreme Court held that federal law preempts failure-to-warn claims involving an FDA-approved product when the defendant cannot unilaterally satisfy state law duties

without the FDA's prior approval. *Id.* at 623-24. Two years later, in *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013), the Supreme Court extended this reasoning to design defect claims, holding that state law claims for design defect are preempted when manufacturers cannot unilaterally change a drug's design.

As the district court observed, a "plain reading" of *Mensing* and *Bartlett* makes clear that any state law claims against retailers "based upon a faulty label" or "drug design" are preempted, given that retailers have no ability to alter the design or labeling of the drug. MDL.Dkt.2513:24; *see also* 21 C.F.R. § 314.71(a) (retailer cannot change the drug label). While *Mensing* and *Bartlett* involved generic manufacturers, their holdings apply equally, if not with more force, to non-manufacturer defendants that have no authority under FDA regulations to alter either the label or composition of an FDA-approved product. MDL.Dkt.2513:27 ("courts dismiss design and label-based claims against any defendant that is powerless to alter a design or label."). Indeed, the Preemption Order accorded with numerous decisions from other courts around the country applying preemption to claims against parties that do not hold a NDA to change a pharmaceutical

product's label. *See, e.g.*, *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 181411, at *3 (D.N.J. Jan. 17, 2021); *Brazil v. Janssen Research & Dev. LLC*, 196 F. Supp. 3d 1351, 1365 (N.D. Ga. 2016); *Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1167 (S.D. Fla. 2020); *see also* MDL.Dkt.2513:19-20 (collecting cases).

Nor does Plaintiff's "parallel misbranding" theory, *see* MDL.Dkt.4924:2; MDL.Dkt.5073:2, permit any exception to preemption for her claims against Schnucks. Plaintiff here has not pleaded any state law claim that parallels the federal misbranding statute. *See* Harrell.Dkt.3; *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 930 (6th Cir. 2014) (explaining that a "parallel misbranding" theory would, among other things, require plaintiffs to "identify specific wrongful marketing claims from the states at issue that parallel, i.e., have elements identical to, a federal misbranding claim under 21 U.S.C. § 352(j)").

In any event, as the district court held in its Preemption Order, retailers like Schnucks who do not hold the product's regulatory license "could not correct the alleged misbranding by altering the composition of the drug, nor could the Defendants alter the drug's label."

MDL.Dkt.2513:30. Accordingly, to avoid theoretical misbranding liability, "[t]he [Retailer] Defendants would have no recourse but to stop selling the drug altogether which they are not required to do to comply with a state law duty." MDL.Dkt.2513:30 (citing *Bartlett*, 570 U.S. at 488-91). None of the Plaintiffs in these consolidated appeals have challenged this independently sufficient ground for finding that claims against retailers like Schnucks are preempted.[6]

Despite having held that the claims against retailers in the MDL were preempted, the district court rejected Brand Defendants' fraudulent joinder argument, on the theory that the court's own rulings on this subject were "not so certain *as to eliminate all possibility of doubt* that a

---

[6] There has also been no challenge on appeal to the district court's alternative holding that post-*Bartlett*, "courts have only entertained the possibility of misbranding-based claims when the claims were 'pure design-defect claims'" (i.e., design-defect claims that do not turn on the adequacy of drug labeling), but that "[b]y definition," such a claims could only be brought against a manufacturer, not a retailer or distributor could not be brought against a retailer or distributor." MDL.Dkt.2513:30 (citing *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2015 WL 7272766 (S.D. Ill. Nov. 18, 2015), and *In re Darvocet*, 756 F.3d at 929-30). The district court's additional, independent reasons for rejecting Plaintiff's parallel misbranding arguments are well-founded for the reasons that Defendants explain in *Krause* and *Chandler*, but the bases described above are sufficient to establish that Plaintiff's claims against Schnucks are clearly preempted.

Missouri state court judge could disagree with this Court." MDL.Dkt.5166:3-4 (emphasis added). That sets the standard impossibly high. As the district court's own analysis makes clear, for a Missouri court to conclude that Plaintiff's claims are not preempted, the state court would have to ignore or misread binding precedent from the U.S. Supreme Court. The fraudulent joinder standard does not require a removing defendant to disprove the possibility that a state court would misapply governing federal law. As this Court has put it, to preclude fraudulent joinder, "[t]he potential for legal liability must be reasonable, not merely theoretical." *Legg*, 428 F.3d at 1325 n.5 (cleaned up).

So too here. It is "possible" that a Missouri trial court would not follow U.S. Supreme Court precedent and would incorrectly hold that Plaintiff's claims against Schnucks are not preempted. The district court noted the decision of a state trial court in New Mexico that had reached such an erroneous conclusion, contrary to the district court's own preemption rulings. MDL.Dkt.5166:3 (citing *New Mexico v. GlaxoSmithKline, LLC, et al.* Case No. D-101-cv-2020-01289 (5th J. Cir. Ct. N.M., Aug. 17, 2021)). But Brand Defendants should not be required—in order to avail themselves of a federal forum—to prove that

a state trial court could not possibly reach an erroneous legal conclusion. Because the principles set forth in governing U.S. Supreme Court precedent foreclose liability against Schnucks for the labeling and design claims that Plaintiff asserts, Schnucks was fraudulently joined.

## IV. The District Court's Rule 41(b) Dismissal Stands Regardless of Subject Matter Jurisdiction

This Court should affirm the court's order of dismissal with prejudice pursuant to Rule 41(b) regardless of its ruling on subject matter jurisdiction. The district court entered that dismissal as a sanction for Plaintiff's willful disobedience of its orders and failure to prosecute her case. Harrell.Dkt.42:6-7. Having failed to argue that this dismissal was erroneous, *see* Harrell.Br.2, Plaintiff has waived any challenge to it. *See, e.g.*, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

Plaintiff cannot escape dismissal even if the district court lacked subject matter jurisdiction to decide the merits of the action. In the leading case of *Willy v. Coastal Corporation*, 503 U.S. 131 (1992), the Supreme Court upheld a district court's imposition of attorneys' fees under Rule 11, notwithstanding the court's lack of subject matter jurisdiction. As the Court explained, "[c]ourts do make mistakes … But

where such an immediate appeal [on the question of jurisdiction] is not authorized, there is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedural rules in the interim." *Id.* at 139. The sanction in *Willy* was "collateral to the merits": it did not involve an "assessment of the legal merits of the complaint." *Id.* at 137–38. Rather, "it required the determination of a collateral issue: whether the attorney ha[d] abused the judicial process and, if so, what sanction would be appropriate." *Id.* at 138. Thus, "the maintenance of orderly procedure, even in the wake of a jurisdiction ruling later found to be mistaken— justifies the conclusion that the sanction ordered here need not be upset." *Id.* at 137.

*In re Exxon Valdez*, 102 F.3d 429 (9th Cir. 1996), applied *Willy* to facts similar to this case. There, the Ninth Circuit upheld the district court's dismissal of claims with prejudice pursuant to Rule 37 after the plaintiffs failed to comply with discovery orders. *Id.* at 431. Despite finding that removal of the cases to federal court was improper, the Ninth Circuit upheld the dismissal, explaining that "[t]he sanctions imposed … were collateral to the merits of the actions, just as the Rule 11 sanctions

were in *Willy … ." Id.* The majority of federal circuits have hewed to the same path, holding that case-dispositive sanctions remain valid even when subject-matter jurisdiction on the merits is lacking. *See Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 700 (5th Cir. 2023); *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005); *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1091 (D.C. Cir. 1998).[7]

This Court's precedents point clearly in the same direction. This Court has recognized that under *Willy*, a district court may sanction a party for violating local rules or court orders even if the court lacks subject matter jurisdiction. *See, e.g.*, *Hyde*, 962 F.3d at 1309-10; *Mahone v. Ray*, 326 F.3d 1176, 1180 (11th Cir. 2003). And this Court has held that dismissal with prejudice as a sanction for disobedience of court

---

[7] Two circuits have taken the contrary view, on the basis that that a dismissal with prejudice is in effect a merits ruling. *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999); *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 157 (3d Cir. 1997). These rulings fail to implement *Willy*'s guidance that litigants challenging jurisdiction are not given free license to shirk district court orders. *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) ("[T]he purpose of the sanctions outlasts the end of the case. Otherwise, parties who abuse the judicial procedures could get off scot-free anytime it turned out that the district court lacked subject-matter jurisdiction.").

orders is collateral to the merits. In *Zow v. Regions Financial Corp.*, 595 F. App'x 887 (11th Cir. 2014), the plaintiffs argued that dismissal with prejudice as a sanction for violating court orders was improper because they had already voluntarily dismissed their case without prejudice under Rule 41(a). This Court disagreed, explaining that "after dismissal, the district court retains jurisdiction to consider collateral issues … including imposition of contempt sanctions." *Id.* at 888-89 (citing, *inter alia*, *In re Exxon Valdez*, 102 F.3d at 431).

Here too, the Rule 41(b) dismissal was a sanction collateral to the merits of Plaintiff's claims. The district court dismissed Plaintiff's action not as a result of any "assessment of the complaint's legal merits," *Willy*, 503 U.S. at 138, but rather because Plaintiff had "elected not to prosecute" her case, and because Plaintiff's refusal to produce evidence of medical causation by a date certain "amounts to defiance of reasonable orders" that were "necessary to avoid the congestion of [the court's] docket." Harrell.Dkt.42:6 (internal quotation marks omitted). Since Plaintiff has waived any argument that the Rule 41(b) dismissal with prejudice was an improper sanction, this Court should affirm the dismissal.

# CONCLUSION

For the foregoing reasons, the decision below should be affirmed.

Dated July 25, 2024

Respectfully submitted,

*/s/ Daniel S. Pariser*

PAUL ALESSIO MEZZINA
JOSHUA N. MITCHELL
KING & SPALDING, LLP
*1700 Pennsylvania Ave., NW*
*Ste. 900*
*Washington, DC 20006*
*(202) 626-8972*

MADISON KITCHENS
KING & SPALDING, LLP
*1180 Peachtree St., NE*
*Ste. 1600*
*Atlanta, GA 30309*
*(404) 572-2712*

MATTHEW V.H. NOLLER
KING & SPALDING, LLP
*50 California St., Ste. 3300*
*San Francisco, CA 94111*
*(415) 318-1200*

*Counsel for Boehringer Ingelheim*
*Pharmaceuticals, Inc., Boehringer*
*Ingelheim Corporation, and*
*Boehringer Ingelheim USA*
*Corporation*

DANIEL S. PARISER
SALLY L. PEI
ARNOLD & PORTER
  KAYE SCHOLER LLP
*601 Massachusetts Ave., NW*
*Washington, DC 20001*
*(202) 942-5000*

ILANA H. EISENSTEIN
RACHEL A.H. HORTON
M. DAVID JOSEFOVITS
DLA PIPER LLP (US)
*1650 Market St., Ste. 5000*
*Philadelphia, PA 19103*
*(215) 656-2431*

SAMANTHA L. CHAIFETZ
DLA PIPER LLP (US)
*500 Eighth St., NW*
*Washington, DC 20004*
*(202) 799-4082*

*Counsel for Sanofi-Aventis U.S.*
*LLC, Sanofi US Services, Inc.,*
*and Chattem, Inc.*

JOSEPH G. PETROSINELLI
AMY MASON SAHARIA
ANNE E. SHOWALTER
LIBBY A. BAIRD
WILLIAMS & CONNOLLY LLP
 680 Maine Avenue, SW
 Washington, DC 20024
 (202) 434-5000

*Counsel for Pfizer Inc.*


STEVEN REITENOUR
BOWMAN & BROOKE LLP
 150 S 5th St. #3000
 Minneapolis, MN 55402
 (612) 672-3244

*Counsel for Patheon
Manufacturing Services LLC*

JAY P. LEFKOWITZ
KIRKLAND & ELLIS, LLP
 601 Lexington Avenue
 New York, NY 10022
 (212) 446-4800

COLE CARTER
KIRKLAND & ELLIS, LLP
 333 West Wolf Point Plaza
 Chicago, IL 60654
 (312) 862-1951

*Counsel for GlaxoSmithKline
LLC, GlaxoSmithKline Holdings
(Americas) Inc., and
GlaxoSmithKline PLC*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and 32(g)(1), the undersigned counsel for appellees certifies the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,844 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared using Microsoft Office Word 365 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

*/s/ Daniel S. Pariser*
Daniel S. Pariser

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing brief was filed electronically on July 25, 2024 and will therefore be served electronically upon all counsel.

*/s/ Daniel S. Pariser*
Daniel S. Pariser